The People *against* C. and L. Sands.

The People
v.
C. & L. Sands.

On an in-
dictment for a
nuisance, in
keeping 50
barrels of gun-
powder *in a
certain house,
near the dwel-
ling houses of
divers good ci-
tizens, and
near a certain
public street,
&c.* it was
held that the
fact so char-
ged, does not
amount to a
nuisance. *Ali-
ter* if it had
been alleged
to have been
negligently
and improvi-
dently kept.

THE defendants were indicted in *Kings County* for keeping a *nuisance.* The indictment contained two counts. The first states, that the defendant, on the 10th day of *April,* 1804, and on divers other days and times, between that day and the day of taking the inquisition, with force and arms, at *Brooklyn, &c. near the dwelling houses* of divers good citizens of the State, and also, *near a certain public street,* there did keep, and still keep and maintain, a *certain 'house,* and then and there, on &c. unlawfully and injuriously, in the said house, did receive and keep, and still keep, 50 barrels of GUN-POWDER, whereby divers good citizens, there residing and passing, are in great danger, to the damage and common nuisance of all the good citizens there residing, and passing and repassing the said street, &c.

The second count charged, that the defendants, on the 10th of *August,* in the year aforesaid, at &c. to wit, in the common, and public street, there called the main steet, leading from a place there, called *Brooklyn Ferry,* to the *Dutch Church,* in the said town, being the people's common highway, from time immemorial, used with carts and carriages, to go, return, pass and repass, &c. unlawfully and injuriously did put and place ten casks of *gun-powder* on a certain cart, the wheels of which were bound with iron, and the said cart did cause to be drawn in, by, through, and along the said street, over gravel and stones there being, by reason whereof the good citizens of this State, at &c. on, &c. could not go, and return, pass and repass along the said street, without great danger, to the great damage and common nuisance of all persons passing, &c. through the said street, &c.

Upon this indictment, the defendants were tried and found guilty. The proceedings having been removed into this court, by *certiorari,* the defendants moved in arrest of judgment, on the ground, that the acts charged in the indictment do not amount to a nuisance.

The motion was argued at the last term, by *Jones* for the

defendants, and *Riker*, attorney of the district, in behalf of the *People*.

*Cu. adv. vult.*

The judges, not being unanimous, now delivered their opinions *seriatim*.

SPENCER, J. On the part of the defendants, it has been contended,

1. That to keep powder under the circumstances stated in the indictment is not a nuisance.

2. That the offence consists only in its being carelessly kept.

It is a settled principle in the criminal law, that nothing can be intended in support of an indictment; and *è converso*, nothing can be intended, after a trial and conviction, against the facts charged, or that they exist otherwise than they are stated. I dismiss, therefore, all that was said relative to the great security of the house in which this powder was kept, as also every circumstance tending to shew that it was carelessly kept, and proceed solely on the facts, that the defendants kept in an ordinary house, fifty barrels of gun-powder, near the dwelling-houses of divers citizens, and near a certain public street at *Brooklyn*, to the common nuisance of the good people there, if, in point of law, powder thus kept, can be a common nuisance.

" Common nuisances (says Judge *Blackstone* in his commentaries)† are a species of offences against the public order and economical regimen of the State; being either the doing of a thing to the annoyance of all the King's subjects, or the neglecting to do a thing which the common good requires." Under this head, he refers the making, keeping, or carriage of too large a quantity of *gun-powder* at one time, or in one place, or vehicle, which he says, " though not declared a common nuisance, is prohibited by the 12th Geo. 3, c. 61, under heavy penalties and forfeitures." He gives no direct opinion, whether the keeping too large a quantity of it in one place was a nuisance or not, at common law. When he says " though not declared a common nuisance," I understand him to refer to this statute which has not *eo nomine*, declared it a nuisance, and not as speaking in reference to the common law. If, however, he infers, as the defend-

† 4 Vol. p. 167.

ants' counsel have done, that it was not a common law of fence, because the legislature have prohibited it under superadded penalties, with all deference, I cannot subscribe to the conclusion. We know that statutes have frequently been passed in aid of the common law, and to render the offence more penal. This is the case, as it respects *Champerty* and *Maintenance ;* so in the statute of the 2d *William* and *Mary*, sess. 2d, chap. 8, sect. 2, against keeping hogs in the streets of *London*. A variety of other cases might be stated.

The statute to prevent the storing of gun-powder within parts of the city of *New-York*, has been mentioned, in support of the position, that anterior to that statute, there existed no restraint. It is liable to the same answer, that has already been given to the statute of *George* III. that it creates specific, and additional penalties, and goes into a variety of detail ; but it by no means proves that it was not an offence at common law. In a case in 12 *Mod.* 343,* cited by the counsel for the people, it appears that " a person was indicted for a nuisance for keeping several barrels of gun-powder, in a house in *Brentford Town*, sometimes two days, sometimes a week, until he could conveniently send them to *London*." Among other resolutions of Chief Justice *Holt*, are these, " that to support that indictment, there must be apparent danger, or mischief already done, and that though gunpowder be a necessary thing, and for defence of the kingdom ; yet if it be kept in such a place as is dangerous to the inhabitants, or passengers, it will be a nuisance."

* *Anonymous.*

The principles here laid down are supported by considering the definition of this offence, and the decisions in analagous cases. In the case of the *King* v. *White* and *Ward*,* which was an indictment for manufacturing offensive liquors, near the King's highway, and near the dwelling-houses of several of the inhabitants, Lord *Mansfield* says, " it is not necessary that the smell should be unwholesome, it is enough if it renders the enjoyment of life and property uncomfortable."

* 1 *Burr*, 333.

Would it admit of a doubt whether there was any existing remedy, if a powder-mill should be erected, for the manu-

facture of that article in a large and populous town? It appears to me impossible to say, that our citizens are remediless, in such a case. If the law yields them protection from a *communis rixatrix*, can it withhold protection where their lives and their properties are jeopardized? I cannot hesitate to conclude that powder may be kept in such quantity, and in such manner, as to render the person keeping it guilty of a nuisance.

<div style="float:right">ALBANY,
Feb. 1806.

The People
v.
C. & L. Sands.</div>

If this be so, from what circumstance are we to infer, that the defendant is not culpable? In examining this point, the place, and quantity kept, are alone to be enquired into, because, if it is to be intended, as I think it is, that the defendants are not to be considered as remiss in their attention to the powder, it does not follow that under the custody of even prudent and careful persons, disasters might not happen, or that this house, the receptacle of the powder, might not be struck with lightning. The place, as stated in the indictment, is a house near the dwelling-houses of divers citizens, and near a certain public street at *Brooklyn*. In the case already cited from *Burrows*, Ld. *Mansfield* considered the term *near* as a sufficient laying of the offence, and he adds " the very existence of the nuisance depends on the number of houses, and concourse of people, and this is a matter of fact to be judged of by the jury." So here, whether this *depot* of the powder, as proved, would render this a nuisance, was matter for the jury, and we are not to suppose their finding against the truth of the facts. The quantity, I think was also matter for the consideration of the jury, depending on various circumstances, of which it is impossible for us to judge.—Though we have the opinion of our legislature, who interdict the keeping of more than twenty-eight pounds in any one place in the city of *New-York*, except in magazines, and even that is to be separated into four parcels in stone jugs, or tin canisters, I can find no objection to the indictment in respect to the quantity.

The defendants' counsel have urged, that we are to intend, that this is a powder-house well protected, or that it was a house used by the defendants, for storing powder, be-

*fore* the other houses at *Brooklyn* were erected. It is necessary only to say, that such intendments would be without any basis to support them, and directly against the finding of the jury.

I consider the defendants as convicted legally of a nuisance, and that judgment should pass on them for this offence.

THOMPSON, J. This case comes before the court on a motion in arrest of judgment. The indictments againt the defendants, is for a nuisance ; and in determining whether judgment ought to be rendered on the verdict of the jury, we can look only to the offence, as charged on the indictment. We cannot judicially travel out of the record, to inquire whether such facts do exist, which, if charged, would warrant a conviction of the defendants : we are only to determine, whether the indictment before us, presents such facts as, in judgment of law, amount to a nuisance. I am satisfied it does not.

The indictment contains two counts. [ Here the judge stated the words in which the offence was charged in the first count.] The whole charge alleged against the defendants, when stripped of the formal parts of an indictment, is, that they *kept* 50 *barrels of gun-powder in a house, near dwelling houses, and near a public street.* The indictment is not to be extended, by inference, or implication. It cannot, therefore, be intended, that the house was insufficient for the purpose to which it was appropriated, or that due and ordinary care was not used in keeping the powder. If so, it appears to me to be too broad a rule to adopt, that 50 barrels of *gun-powder*, kept in a *proper* house, near dwelling-houses, and near a public street, shall, *per se*, be deemed a public nuisance. Such circumstances may exist as to make it a nuisance ; but those circumstances must be stated upon the indictment. 1 *Burr.* 337.

The English statute, and the statute of of this State, regulating the manner of keeping and carrying gun-powder, are not declaratory acts, but contain new provisions, and restrictions, which afford an inference, that the common law stood in need of some aid to guard against the evils ap-

prehended from the keeping of gun-powder.' (4 Black. Com. 168.)

The second count in the indictment is still more clearly defective than the first, and needs only to be stated, to shew that no crime is there charged against the defendants. The allegation it contains, is, substantially, that the defendants caused to be carried through the common and publc street, in the town of *Brooklyn*, two casks of gun-powder, in a cart, the wheels of which were bound with iron. The manner in which they were secured, or the quantity of powder contained in the casks, is not stated. The sympathy of the law for the fears of mankind, would be great, indeed, if the allegation contained in this count, would constitute a public nuisance. There is nothing stated, from which the court can intend the existence of real danger.

My opinion, therefore, is, that judgment must be arrested.

LIVINGSTON, J Whether a powder-house, *near* private dwellings, and a public highway, be a common nuisance, is the only question on the first count of this indictment. I say *powder*-house, because, although the building is not described *as such*, it may fairly be presumed, from the indictment, to have been erected, and maintained for no other purpose. If it had been a dwelling, or any edifice improper in itself for keeping this article, it would have been so stated. In addition to this, the fact of its being a brick-building, constructed for the storing of powder, and secured by conductors, and every other usual guard against accidents, has come to my knowledge in such a way, as will justify my now taking notice of it.

This is the second indictment tried before me for this nuisance. On the first trial, it appeared that the store was strong, built of most suitable materials, and well defended against every probable danger ; nor was there any pretence of its being negligently or improvidently kept.

The right of manufacturing, and vending an article, so essential to public defence, and of such extensive private consumption, will not be denied. From this must follow, the right of storing it either for sale, or until it be wanted for national, or other purposes.

The only difficulty is, to say, how, and where, it shall be

placed : here no other rule can be prescribed, but by the legislature, without excluding its use altogether, than that of keeping it any where, at the option of its owner, provided the lives of the surrounding, or passing inhabitants, be not thereby exposed to probable danger, either from the place, or manner of keeping it. If *mere possible* injury be a ground for a prosecution, it will amount to a total proscription of the commodity, unless in very small quantities indeed ; for who can say that lives may not be lost, or houses destroyed, by an explosion of the hundredth part of the quantity which is alleged to have been stored in this building ; and yet because such an event be not impossible, a shopkeeper at *Brooklyn* would hardly incur the penalties of a nuisance, by keeping a reasonable quantity at a time, to retail, though more real danger is to be apprehended from such practices, than from much larger quantities in a powder magazine. In the latter place, it is only visited in the day, and by persons who will use more than common precaution, from the very circumstance of there being more than an ordinary quantity collected in one spot, and as they will inevitably be the first and certain victims of an explosion. Except when thus visited, there can be little, or no danger. It is never approached by fire, and, from the effects of lightening, it is protected by its rods. A safer mode of keeping this article than in a building thus constructed, cannot well be devised ; but if it be not permitted to place them *near* to any dwellings, or highways, which, by the bye, is not a very definite term, who would be at the expense of their erection ? If a desert spot, at a great distance from any habitation and road, must be selected, the additional expense of transportation, and danger of robbery, will deter every one from providing such repositories ; the consequence of which will be, that it must be kept in houses or places, less safe to those in its vicinity. The danger of a magazine's exploding, when properly built and secured, is remote indeed ; so much so, that a jury of *Queens* county, by whom the first traverse was tried, after a very long examination, acquitted the defendants on that *very ground ;* for only one witness was produced who had ever heard of such an event, and that but once. On the trial of

the second indictment, by a jury from *Kings*, that point was not submitted to them, because a majority of the court determined, as a question of law, that a powder-house, thus situated, however built or maintained, was a nuisance, so that the fact of its erection was alone before them. I was well satisfied myself from the former investigation, that the probability of an explosion was too remote, to justify the apprehensions, which many of the witnesses, who lived in the neighbourhood, seemed very honestly to entertain. The jury, who acquitted the defendants, were of the same opinion, though many of them must frequently have passed the noxious building in their way, to, and from the *New-York* market. This opinion acquires some strength from the silence of our books, and as there does not appear among the various printed forms of indictments, a single precedent to suit the present case. The district attorney produced none, and those to which he referred, only established what was not denied, that animals, which it is lawful to keep, and are not nuisances, *per se*, may, under certain circumstances, become so. Thus *bulls*, *dogs*, and many other beasts, if particularly vicious, or dangerous, and carelessly kept, are regarded as common nuisances. Precisely on this footing, stand powder-houses. Of themselves they are innoxious, although not distant from mansions or highways, unless negligently secured or attended.

The only case,* which bears the semblance of an authority, was decided at *Nisi Prius;* for the one from *Strange*† does not state where, or how, the powder-house was kept. But whether the house whose owner was indicted, was a private dwelling, or one erected for the purpose, and well secured, does not sufficiently appear. The point however, resolved, was not that a powder magazine was not in itself a nuisance, but that to render it such, there must be "*apparent danger or mischief already done ;*" for, as Lord *Holt* well remarks, "though gun-powder be a ne-" cessary thing, and for defence of the kingdom ; yet if be " kept in *such a place*, as is dangerous to the inhabitants, " or passengers, it will be a nuisance." This is a rule too

ALBANY,
Feb. 1806.

The People
v.
C. & L. Sands.

* 12 *Mod.* 342.

† 2 Vol. p. 1167.
*Rex* v. *Taylor.*

reasonable not to command our ready assent, and if the jury had passed on this point, there would be no hardship in rendering judgment on the verdict; but they were told by me, in compliance with the unanimous opinion of the magistrates, who sat in the *oyer and terminer*, that a powder-house was, *ipso facto* a nuisance, and not a witness was examined to shew the apparent danger of the one in question. The transaction having passed exactly as is here stated, it would be folly to suppose, contrary to what I know to be the truth, that the defendants were convicted upon the probable danger to which the public were exposed, especially, when the form of the indictment is not such, as necessarily to lead to this conclusion. The mere laying a thing to be " *ad commune nocumentum*" is not sufficient but the court must examine, says Mr. Justice *Fowler*, whether the fact laid, implies a nuisance.

If the rule of Ld. *Holt*, and which is here adopted be not a safe one, it is better that the legislature should interfere, than to put these buildings under the unlimited controul of a jury of the vicinage, who, however honest, will be more or less influenced by imaginary fears, which artful men will not fail to cherish and increase. Both in *England*, and in this country, such interference has taken place, which furnishes a pretty strong argument against powder-houses being nuisances at common law. By the 12 Geo. III. ch. 61, the making, keeping, and transporting of gunpowder is regulated under heavy and various penalties. This act, which has not declared any of the offences therein enumerated, a common nuisance, also directs that powderhouses should be erected of the same materials of which this is composed.

The only act we have relating to this matter, is confined in its operation to the city of *New-York;* the legislature not having thought proper to extend its provisions to other districts of the state. This statute prescribes penalties, for keeping more than a certain quantity, in any one place, in the city, except in the public magazine at *Fresh Water*, or in a different manner than is there enjoined,

and regulates the manner of its carriage through the city, but also omits making any of the offences common nuisances. It is not hence contended, that keeping this article in a powder-house, properly constructed, may not, in cases of gross negligence, become dangerous, and a nuisance; but that the storing of it, in this way, is lawful in itself, and not in every instance a nuisance, on account of the building's being in the neighborhood of dwelling-houses, or contiguous to a highway.

The only difficulty, I feel in this cause, arises from the manner in which it is brought before us, and not from any intricacy in the real question, which, from what passed at the trial, I know it was the intention of both parties to submit. But besides the answers already given to the argument drawn from a probability, that the jury proceeded on the ground of negligence, there is another which is suggested by a palpable defect in the indictment. It states that the defendant did " *unlawfully* receive and keep, and yet doth keep, in this house, fifty barrels of gun-powder," which is the only alleged cause of the hazard complained of. Now, if it be not unlawful, as has been shewn, to store powder in this way, we cannot give judgment against the defendant, without recognizing a principle, which must end in the demolition of every powder magazine in the state. It is essential that every indictment of this kind, where the principal act is lawful, should state, with precision, what has rendered it otherwise, that is, from what causes arise the dangers which it is contemplated to suppress. In this instance, the prosecutor ought to have alleged a want of care, or some negligence in the manner of its storing or keeping; because, whether a lawful act becomes a nuisance in a particular way, or in consequence of inattention, is, oftentimes, a question of law, on which a defendant is not obliged to acquiesce in the opinion of a jury. But of the judgment of a court he will be debarred, if bills may be drawn in this general way, and every defect supplied by presumptions, (which, in this case, are directly against the truth) that every thing was proved necessary to constitute a nuisance.

ALBANY,
Feb. 1806.

The People
v.
C. & L. Sands.

I take no notice of the second count, because no attempt was made to support it.

My opinion is, that it is not unlawful, except in the city of *New-York*, to keep gun-powder in a magazine properly constructed, and secured, though the same be *near* to dwelling-houses, and a public street; but that if by negligence, or want of care, it becomes dangerous, the owner may be indicted; and further, that such negligence, being the *git* of the offence, should appear of record, so that the grounds on which a jury proceed may not be matter of conjecture, but be tested by the acts laid in the indictment. No negligence, or want of care being stated, and knowing judicially, that none was proved, I am of opinion that judgment must be arrested.

KENT, C. J. The first count in the indictment merely charges, that the defendants kept fifty barrels of gun-powder in a certain house in *Brooklyn*, near dwelling-houses and near the public street. It does not state the manner in which the house and powder were kept, and the validity of the count depends upon this general question, whether fifty barrels of powder, kept in a house near dwelling-houses and the public street, is, *per se,* a nuisance? There is no allegation that the house or powder were carelessly kept, and we must consider the case as if it were kept with the greatest discretion and security. The indictment cannot be extended by inference or implication. The only question is, whether the *facts laid* imply a common nuisance? I am clearly of opinion that they do not, and that a powder-house near dwelling-houses, may or may, not be a nuisance, according to circumstances, and which circumstances must be explicitly stated in the indictment, so that the defendants may be prepared to meet them, and so that the court may judge of their force.*

* *Hawk.* book 1. ch, 76. § 88.

The books contain very few cases on the subject. There is an anonymous case in 12 *Mod.* 342, and said to have been decided before *Holt,* C. J. at *Nisi Prius,* on an indictment for keeping several barrels of gun-powder in a house in *Brentford,* till they could be conveniently sent to *London.* The indictment is not given, and we cannot,

therefore, know under what circumstances the powder was
charged to have been kept, but from the temporary deposit
of it, we may infer, that it was not deposited in a house
well prepared for its reception. In that case *Holt* is said
to have ruled that to support the indictment, there must
be apparent danger, or mischief already done ; and that if
the house where the powder was kept, was appropriated
for that use before the houses near by were erected, it is no
nuisance, and that if gun-powder be kept in such a place
as it is dangerous to the people, it becomes a nuisance.
This case, as far as it is any authority, goes in confir-
mation of the principle, that the time, place and man-
ner, are all important and essential in determining, whether
a powder-house amounts to a nuisance, but considering the
loose manner in which this case is reported, and the book
in which it is found, it is not entitled to much, if any, con-
sideration. The case of *The King* v. *Taylor*, (*Str.* 1167)
was also cited, but it throws no light on the question ; it
states merely the fact, that the court of *K. B.* granted an
information against the defendant, as for a nuisance, for
keeping great quantities of gun-powder to the endangering
the church and houses where he lived.

The inference to be drawn from the *British* statute of 5
G. 1. c. 26. is certainly of very considerable weight in the
argument, that a powder-house near dwelling-houses is not,
of itself, and under all circumstances, a nuisance. That
statute recites, that great quantities of gun-powder were
frequently kept in warehouses and other places, in and
about the cities of *London* and *Westminster*, to the apparent
danger of the inhabitants, and it enacts that from a certain
day thereafter, it should not be *lawful* to keep above six
hundred weight, at one time, in any warehouse or other
place within the said cities ; and it is worthy of notice, that
the statute also declares, that after a certain day, it should
not be *lawful* to carry through the streets more than two
thousand weight of gun-powder at one time, and it parti-
cularly prescribes the mode of carriage. If the present
indictment be good, these stores of gun-powder, within

the city of *London*, were probably all nuisances as they must have been near dwelling-houses and other buildings, as well as near public streets. It can hardly, however, be supposed, that if they were so, the frequent use of them would have been endured, and that it would have been deemed requisite to have declared, that after such a day they should be unlawful. It is not unfrequent for a statute to come in aid of the common law, by giving a new remedy, or additional penalties. The case of keeping swine within the paved streets of the city of *London*, where the houses are contiguous, is mentioned as an instance, but the language of the stat. of 2 *W.* and *M.* 2 sess. ch. 8. § 20. is, in that case, very different. It declares, that for the *better keeping* the streets, &c. no person shall breed or keep swine under the pain of forfeiting them, and does not declare that the practice thereafter shall be deemed unlawful, for the common law had already made such a declaration. (2 *Salk.* 460.)

The second count in the indictment admits of much less doubt than the first. It contains only the naked fact, that the defendants caused to be carried through the street ten casks of powder in a cart, the wheels of which were bound with iron. The quantity of powder in these casks, or the manner in which they were secured in the cart, is not stated, and it appears to me impossible to adjudge that the act alone amounted to a nuisance, however well the powder might have been guarded from accident, and however small the quantity might have been. The fears of mankind will not alone create a nuisance, without the existence of real danger. (3 *Atk.* 750.)

I am of opinion, accordingly, that judgment ought to be arrested.

TOMPKINS, J. having been concerned as counsel, gave no opinion.

Judgment arrested.