# Kinney *v.* Koopman & Gerdes, and Rudder *v.* Koopman & Gerdes.

*Action to recover Damages resulting from Explosion of Gunpowder.*

1. *Nuisance; storing of gunpowder not nuisance per se.*—The storing and keeping of gunpowder or dynamite in large quantities near the dwelling-houses of citizens in a thickly settled portion of a town and near a certain public street in said city, is not a nuisance *per se*; and to constitute such a nuisance, there must be negligence or a want of due care in storing and keeping it.

2. *Same; same; liability therefor.*—The storing and keeping of large quantities of gunpowder or dynamite in a wooden building located within the corporate limits of a town in a thickly settled and populated portion of such town, shows a want of due care, and, therefore, constitutes a nuisance; and a complaint which seeks to recover damages to plaintiff's building caused by fire resulting from the explosion of the dynamite and gunpowder so kept in proximity to the plaintiff's building, states a cause of action, and it is not necessary for it to aver specific negligence in the storing and keeping of such explosives.

3. *Same; storing gunpowder in violation of statute; liability therefor.* Any person who keeps more than fifty pounds of gunpowder for sale

or use within the corporate limits of any city or town, in violation of the statute (Cr. Code of 1886, § 4008; Code of 1896, § 5351), is liable to one intended to be protected by the statute for injuries to his property caused by an explosion of the gunpowder.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

The facts of the case of *Rudder v. Koopman & Gerdes*, are stated in the report of the case which follows this case. The following statement is in the case of *Kinney v. Koopman & Gerdes*.

This was an action brought by the appellants, P. H. Kinney, *et al.*, against the appellees, Koopman & Gerdes, to recover damages.

The complaint as originally filed contained one count, which was as follows: "The plaintiffs claim of the defendants ten thousand dollars as damages for that, heretofore, to-wit, on or about the 4th day of March, 1894, in the incorporated town of Cullman, in said State and county, the said defendants, well knowing the highly dangerous and explosive qualities of dynamite, did store or deposit a quantity of dynamite within the incorporated limits of said town, which did on or about said date explode with great violence and cast burning timbers and coals of fire upon the building in said town, within which said building these plaintiffs were engaged in carrying on a general merchandise business, and in which they had at this time stored a large amount of goods, wares, merchandise, notions, furniture and other articles of value, such as are usually kept for sale and for use in and about a general country store, and the said store was thereby burned down and its contents burned wholly up and totally lost to these plaintiffs, to their damage as aforesaid, for which damage this suit is brought."

To this complaint the defendants demurred upon the following grounds: "1st. Because it is nowhere averred in said complaint that the defendants were guilty of any negligence whatever in depositing the alleged dangerous or explosive substance in the city of Cullman. 2d. Because it is nowhere alleged in said complaint that by reason of the alleged deposit of explosive substances the same was likely to explode, or that the natural tendency of the said substance was to explode. 3d. Because the facts setting forth the cause of the alleged explosion are nowhere set forth in said complaint. 4th. Because

no such facts are averred in said complaint as show, or tend to show, that the depositing of the alleged explosive substances was the proximate cause of the alleged damage." This demurrer was sustained, and the plaintiff thereupon amended his complaint by adding the following counts: 1. "The plaintiffs claim of the defendants the further sum of five thousand dollars as damages and allege that the said defendants were in the possession and control of certain buildings and lots and their appurtenances in the incorporated town of Cullman, said State and county, in a thickly settled part of said town on and prior to the 4th day of March, 1894. That the defendants well knowing the highly explosive nature of and the immense power for injury in case of explosion of dynamite, and especially when the same is kept in connection with the caps or fuse used in exploding the same, did nevertheless, negligently, wrongfully and injuriously keep a large amount, to-wit, four boxes of dynamite, and in connection thereto, or in the same box or can thereto, did also keep caps or fuse upon the ignition or the explosion of which the said dynamite would immediately explode, and negligently, wrongfully and injuriously allowed the dynamite in such condition to remain in or on their said premises, so that on the day and date above set forth, their said building having caught fire, the said dynamite with the caps and fuse were ignited and exploded with such force and violence that the burning shingles or pieces of boards and timbers from the defendant's burning store were hurled, or carried, or thrown upon plaintiffs' building or buildings adjoining plaintiffs' building, neither of which were more than five hundred feet from the said building of the defendants so that plaintiffs' building with all their contents, to-wit, household goods, wares and merchandise were set on fire and wholly consumed, to their damage as aforesaid, hence this suit. 2d. The plaintiffs claim of the defendants the further sum of five thousand dollars, and allege that the defendants were in the possession and control, of certain houses and premises in the incorporated town of Cullman in said State and county, and in a thickly populated portion of said town, and while so possessing and controlling such premises they had stored therein, to-wit, on the 4th day of March, 1894, a large amount, to-wit, four boxes of

dynamite with caps or fuses, and to-wit, more than fifty pounds of gun powder, the explosion of either of which the said defendants well knew would occasion great loss and damage to all the property adjoining the immediate vicinity of their said premises where the same was stored; that the said dynamite and powder were stored in a wooden frame building at or near other wooden houses or structures, and on, to-wit, the said 4th day of March, 1894, a fire having originated in a building adjoining the building where said explosives were stored, and it being apparent and evident that the fire would soon catch or burn defendants' premises where such explosives were stored and that thereby the same would be exploded, the said defendants, though ample time and opportunity was afforded by the exercise of due care and diligence on their part so to do, wholly failed, neglected and refused to remove said explosives from the said place of deposit and to a place of safety from said fire, but wrongfully, negligently and injuriously allowed the same to remain until their premises took fire and burned and caused the said dynamite and gun powder to explode, and by the force, power and violence of such explosion, threw burning fire brands, or coals or pieces of burning timber upon the building of the plaintiffs or upon the buildings adjoining the buildings of the plaintiffs, neither of such buildings being more than, to-wit, five hundred feet from the said buildings of the defendants, whereby the buildings of the plaintiffs were set on fire, and the same with all their contents of household goods, furniture, goods, wares and merchandise were wholly consumed and destroyed, to their damage of five thousand dollars as aforesaid, hence this suit."

To the first count of the amended complaint the defendant demurred upon the following gounds: "1st. Because it is not sought to connect the defendants in any manner with negligence about the fire which the complaint alleges was the primary and proximate cause of the explosion. 2d. Because it is not alleged therein that the natural tendency of depositing the dynamite and caps, or fuse, together was to explode, or that the explosion was caused alone by so depositing them, but it is alleged in said complaint, that the explosion was caused by a fire, with which the defendants are in no manner connected."

[Kinney v. Koopman & Gerdes; Rudder v. Koopman & Gerdes.]

To the second count the defendant demurred upon the following grounds: "1st. Because it is conceded therein, that the storage of the explosives was legal and bases the sole right for damage for the failure to remove the explosives, but it does not state the defendants were guilty of any negligence in starting the fire, which it is alleged, originated on another's premises, and which it is alleged therein, was the proximate cause of the explosion. 2d. Because under the facts stated in said count there was no duty resting upon the defendants to remove the said explosives." The demurrers to each of these counts were sustained, and by leave of the court the plaintiffs filed additional counts as an amendment to the complaint.

The plaintiff then filed four additional counts; but it is not deemed necessary to set them out in full.

To each of these additional counts the defendants demurred, assigning the same grounds of demurrer as were assigned to the original count of the complaint, and to the 1st and 2d counts of the amended complaint. These demurrers were overruled, and thereupon the defendants pleaded the general issue, and upon this plea the trial was had.

The evidence of the plaintiffs tended to prove, that on or about the 4th day of March, 1894, the defendants stored in a wooden building, on their premises, a large amount of dynamite, caps, fuse and powder, to-wit, a case of dynamite, some caps and fuse, and three kegs of powder, containing twenty-five pounds to the keg; that said powder and dynamite were in a small iron chest or safe of about ⅛ inch thickness, its size being 2x3 feet; that this wooden building in which the explosives were stored was in the midst of the business portion of the incorporated town of Cullman, and that many houses were near and adjacent thereto, where people did business and slept; that in the night time, about ten or eleven o'clock, a fire originated in the York Livery Stable, a building adjoining the Gerdes stable, which was next to and adjacent to the wooden building wherein the explosives were stored; that in consequence thereof the said wooden building caught on fire and the explosion occurred; that one of the defendants, John Gerdes, with some of the men in his employment, were at the fire when the York stable was in flames some minutes before

the wooden building wherein the powder and dynamite were stored began to burn ; that the plaintiffs, with others, were protecting their store, which was across the street ; that the cry of dynamite being raised, the plaintiffs and others fled to the railroad track some distance down the street to get under the cars to protect themselves ; that while at the railroad the explosion took place, and large pieces of burning timber were hurled in and across the street on the house or store occupied by the plaintiffs ; that the explosion was so severe as to kill several persons, wounded others, and knocked down the shelves and counters in plaintiffs' store whereon his goods were placed so as to pile them in middle of the floor ; that immediately after the explosion the plaintiffs' store and adjoining houses to the store occupied by them were in flames, and in consequence the plaintiffs lost most of their stock, which amounted to about $3,000.

The defendants' testimony tended to show, that a fire originated in York's stable, and that the houses adjoining were ignited ; that defendants had nothing to do with or control over said stable ; that the defendants were in no manner or in any wise connected with the said stable ; that a perfect gale was blowing, and in consequence thereof the conflagration took place ; that they had carefully stored in an iron chest some powder alone, a keg and some sticks of dynamite in a small wooden building on the premises ; and that other goods were stored in said building.

There were many charges given by the court at the request of the defendants, to the giving of each of which the plaintiffs separately excepted. It is not deemed necessary that these charges should be set out at length.

There were verdict and judgment for the defendant. The plaintiffs appeal, and assign as error the rulings of the trial court to which exceptions were reserved.

LEA & McMASTER, for appellants.—1. The circuit court erred in sustaining the demurrer to the original complaint. If the allegations of the complaint are true a nuisance existed at law, which caused the loss therein stated, and a good cause of action exists. ''Under our system all pleadings must be as brief as is consistent with perspicuity and the presentation of facts or matters to be put in issue in an intelligible form.''—*Leach v. Bush*, 57 Ala. 145 ; *R. R. Co. v. Dusenberry*, 94 Ala. 418.

[Kinney v. Koopman & Gerdes; Rudder v. Koopman & Gerdes.]

If the complaint sets out either a private or a public nuisance, and injury results therefrom, all the authorities agree that the party erecting or maintaining the nuisance is liable.—1 Sutherland on Damages, §§ 16, 17, 25; *Kingsbury v. Flowers*, 65 Ala. 479; *Crommelin v. Coxe & Co.*, 30 Ala. 318. The peril being imminent and known to the defendants, if they failed in a duty after this knowledge, a good cause of action is stated.—*Gothard v. R. R. Co.*, 67 Ala. 114; *Frazer v. S. & N. Ala. R. R. Co.*, 81 Ala. 186; *Ga. Pac. R. R. Co. v. Lee*, 92 Ala. 262; *A. G. S. R. R. Co. v. Dobbs*, 101 Ala. 232.

2. Nuisance signifies anything that worketh inconvenience; and Bacon defines a common nuisance to be an offense against the public, either by doing a thing which tends to the annoyance of all persons, or by neglecting to do a thing which the common good requires.— *State v. Mayor of Mobile*, 5 Porter, 311; *English v. Progress Elec., &c. Co.*, 95 Ala. 264.

3. In the case at bar the statute laws of the State were invaded by the defendants. The keeping of large and dangerous amount of dynamite and gun powder was a misdemeanor at common law, and comes under the inhibition of section 4192 of the Criminal Code of 1886 : "Any person who commits a public offense, which is a misdemeanor at common law, or by statute, and the punishment of which is not particularly specified in this Code, must, on conviction, be fined," &c. And section 4093 provides that "Any person who keeps on hand, at any one time, within the limits of any incorporated, city or town, on sale or for use, more than fifty pounds of gunpowder, must, on conviction, be fined," &c. If injury follows the breaking of a statute or committing of an offense at law, the wrongdoer is liable.—*Gray v. Mobile Trade Co.*, 55 Ala. 387; *M. & M. R. Co. v. Blakely*, 59 Ala. 471; *C. R. R. & B. Co. v. Letcher*, 69 Ala. 106; *M. & C. R. R. Co. v. Copeland*, 61 Ala. 376; *Hardrop v. Gallagher*, 2 E. D. Smith, (N. Y.) 523.

4. The careless or negligent keeping of gunpowder in large quantities, and in or near dwelling houses, when the lives of persons are endangered thereby, is a nuisance at common law, and indictable as such.—7 Amer. & Eng. Encyc. of Law, 523; *Bradley v. People*, 56 Barb. (N. Y.), 72; *Meyers v. Malcolm*, 6 Hill (N. Y.), 292;

*Heeg v. Licht*, 36 Amer. Rep. 654, and authorities cited in note.

5. One who brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor, and which does escape and cause such damage is liable.— *Wilson v. City of New Bedford*, 108 Mass. 261 ; *Strouse v. Leipf*, 101 Ala. 437.

GEORGE H. PARKER and J. M. FALKNER, *contra*.—The only ground of liability for damages caused by explosion, occurring while the party sought to be charged is in the lawful possession and use of the thing exploding, is in the want of ordinary care and skill in its management.—7 Amer. & Eng. Encyc. of Law, 517 ; Thompson on Negligence, Chap. 1, §§ 11–13 ; *Cook v. Anderson*, 85 Ala. 99 ; *Collins v. R. R. Co.*, 104 Ala. 390.

COLEMAN, J.—The material questions are the same in both of these cases, and probably it would have been better, had both been submitted together as one. Section 4093 of the Criminal Code of 1886 reads as follows : "Any person, who keeps on hand, at any one time, within the limits of any incorporated city or town, for sale or for use, more than fifty pounds of gunpowder, must, on conviction, be fined not less than one hundred dollars." In some of the counts of the complaint, it is averred that the defendants kept stored, within the corporate limits of the town of Cullman, more than fifty pounds of gunpowder, which exploded and caused the destruction of plaintiff's property, but neither of the counts show that the cause of action was founded upon the statute. Other counts aver the storage of just fifty pounds, while in others, the averment is that large quantities and dangerous quantities of dynamite and gunpowder were so kept and stored. In some of the counts it is alleged, that defendants negligently kept large quantities of dynamite and gunpowder in a wooden building in the town of Cullman, or near other buildings, etc. The assignments of error raise the question of the common law liability of a person who keeps in store, in a town or city, large quantities of explosive material, such as dynamite and gunpowder, for damages resulting from its explosion, and also his liability for damages, resulting from a violation of the statute. We have no

statute declaring the storage of gunpowder or explosives in cities or populous places to be a nuisance, and the question must be determined by common law principles. At common law "a public nuisance signified anything that worketh hurt, inconvenience or damage to the King's subjects."—1 Russell Cr., § 317; 3 Blackstone, § 216; 2 Bouv. Inst., p. 503; 2 Bouv. Law Dict., p. 248; 2 Hawkins P. C.; *Ferguson v. City of Selma*, 43 Ala. 398. Probably as comprehensive and correct a definition as any may be found in the 16th volume of Am. & Eng. Encyc. Law, p. 293, where it is said : "The term nuisance in legal phraseology is applied to that class of wrongs, that arise from the unreasonable, unwarrantable or unlawful use by a person of his own property, real or personal, or from his own improper, indecent or unlawful personal conduct, working an obstruction or injury to a right of another, or of the public, and producing such material annoyance, inconvenience, discomfort or hurt, that the law will presume a consequent damage." It will be observed that this definition is broad enough to embrace public and private nuisances, and such as are nuisances *per se*, as well as those which become such by reason of the manner and character, or the place of the use. The distinction between nuisances which are such *per se*, and those uses which become nuisances by reason of the manner and character of the use, or the place, have always been recognized in well considered cases.—*Ogletree v. McQuaggs*, 67 Ala. 580; *Rouse v. Martin*, 75 Ala. 510; *Kingsbury v. Flowers*, 65 Ala. 479; *St. James Church v. Arrington*, 36 Ala. 546; *English v. Progress Electric L. & M. Co.*, 95 Ala. 259. The distinction is clearly stated in the case of the *Earl of Ripon v. Hobart*, (1 Cooper Select Cases, 333, 3 Myl. & K. 169), by Lord Brougham: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief without waiting for the result of a trial. But when the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may, according to circumstances, prove so, then the court will refuse to interfere." This construction is in accordance with the common law, that "a nuisance *per se* is that which worketh hurt," or as defined in the Encyclopedia, "working such an effect upon the right of another that the law will presume a consequent dam-

age." Unless the thing, of itself because of its inher-
herent qualities, without complement, is productive of
injury, or by reason of the manner of its use or ex-
posure, threatens or is dangerous to life or property, it
cannot be said to be a nuisance *per se* at common law.
If an occupation be lawful and by care and precaution
it can be conducted without danger or inconvenience to
another, the occupation is not *per se* a nuisance, and if
such an occupation or business becomes a nuisance, it is
because of a want of proper care or precaution.

In 7 Am. & Eng. Encyclopedia of Law, 517, it is
said : "As a general rule, the true and only ground of
liability for damage caused by an explosion occurring
while the party sought to be charged is in the lawful
possession or use of the thing exploding, is the want of
ordinary care and skill." In the note to this page, it is
said : "'Ordinary care and skill' is a relative term ex-
acting a degree of vigilance and technical knowledge in
proportion to the dangerous character of the substance
dealt with, and requiring that a person, shall take for
the safety of others whatever precautions the nature of
his employment suggest;" citing Thompson on Negli-
gence, Chap. 1, sections 11-13. The question of care
and diligence does not arise in a case of damages result-
ing from nuisance *per se*, because the thing itself was
unlawful. Courts have not always been careful to main-
tain the difference in cases where suit was brought to
recover damages resulting from a cause that is a nuis-
ance *per se*, and damages resulting from the manner of
the use of the thing. The rule of *"sic utere"* requires a
person to so use his own as not to injure another, and
he is responsible for the failure to do so, whether the
"thing" used be a nuisance *per se*, or made so by its
use. The reasoning is not sound that concludes "a
thing" to be a nuisance *per se*, because in its use injury
has resulted. The blasting of rocks is not *per se* unlaw-
ful. But when a person undertakes to blast rocks,
whether in a city or in the country, he may become re-
sponsible for the damage inflicted upon the person or
property of others : this, not solely because of the ex-
plosive material used to effect the blasting, but because
of the damage resulting from the means used and place
and manner of using. A person who would cut a tree
down with an axe, standing on his own right of way, so

as to fall upon the house of another, would be responsible and equally liable as if a huge rock had been thrown by blasting upon the house. So a city or person may be liable in damages for a nuisance, by causing water to leave its natural course, and overflow the lands of another, but this does not argue that water *per se* is a nuisance, but only that the manner of its use may become such. The result does not conclusively determine that the means or instrument used was dangerous, but may show that on account of the place and the manner of use, it was such.

It has been frequently held that the law as to explosives, is the same as that which applies to keeping dangerous and vicious animals. A dog, however vicious, may be secured, so as to render it absolutely harmless. A dog thus kept on one's own premises, is not a nuisance *per se*, because it cannot work a hurt to another. If, however, the dog escapes, and, upon the highway or upon the private premises of another, commits an injury, the owner is liable. Every menagerie or zoo having dangerous and wild animals for exhibition, however securely caged, would be guilty of a nuisance *per se*, if the mere having such animals in cities or on the highway constituted a nuisance. Steam is dangerous, and at times, suddenly, without warning, there are explosions from steam, causing destruction of property and death. If the fact that explosions do occur, causing damage, was conclusive that steam power was a nuisance *per se*, manufacturing in towns and near other people's premises must cease. Under such rule, all steamboating and railroading would be a nuisance *per se*.

Is gunpowder kept in large quantities in public places dangerous, and *per se* a nuisance, without regard to the manner of its use or keeping? When we consider the vast number of government magazines in this country and throughout the world, its daily transportation by every known power of conveyance, its daily use by millions of persons in war or for blasting, or for amusement, with scarcely a single well authenticated instance of spontaneous combustion, it cannot be said, that gunpowder *per se* is dangerous. The difference between a public nuisance and a private nuisance, does not consist in any difference in the nature or character of the thing itself. It is public because of the danger to the public.

[Kinney v. Koopman & Gerdes; Rudder v. Koopman & Gerdes.]

It is private only because the individual as distinguished from the public has been or may be injured. Public nuisances are indictable. Private nuisances are actionable, either for their abatement, or for damages, or both. If the storing of gunpowder so near another's dwelling in the country, where there is no other building, that an explosion would damage the owner, be not a private nuisance *per se*, the storing of the powder in a city will not be a public nuisance *per se*. The decisions of the supreme or appellate courts of different States are not uniform in their statements of the law. We will refer to a few of the leading cases.

The case of *Laflin v. Turney*, 131 Ill. 322 (19 Am. St. Rep. 34, 7 L. R. A. 262), at first reversed, and on rehearing affirmed, shows that the complaint was not demurred to, and it was held that the first count which averred the keeping of the powder magazine, its explosion, and consequent damages, contained a sufficient cause of action to support a judgment. The court held that this count showed that the defendant kept a powder magazine "upon its premises so situated with reference to the dwelling house of the. plaintiff that it was liable to inflict serious injury upon her person or property in case of explosion. It was a private nuisance and, therefore, the defendant was liable whether the powder was carefully kept or not." The second count charged that the powder was kept in violation of a city ordinance. The court held that the keeping of the powder was an illegal act, and "the defendant was responsible for all consequences resulting from the act."

The case of *McAndrews v. Collerd*, (13 Vroom (N. J.) 189), 36 Am. Rep. 508, was a case where the defendant had collected a magazine of explosives to be used for blasting, within the city limits of Jersey City. A statute of the State had declared the keeping of explosives within the limits of a city in larger quantities than a specified amount, to be a misdemeanor. In discussing the question generally the court stated, that the keeping of gunpowder in large quantities in the vicinity of a dwelling house to be a nuisance *per se*.

The case of *Cheatham v. Shearon*, 1 Swan, 213, (55 Am. Dec. 734), was a case where a powder house was

erected in a populous part of the city and which was exploded by lightning. The court held "that the erection of a powder magazine in a populous part of a city, and keeping stored therein large quantities of gunpowder, is *per se* a nuisance." The court uses the following argument: "The fact that it is liable to explode by means of lightning, against which no human agency could guard, is decisive of the question. If the explosion could only be produced by human agency there would be much force in the reasoning of the majority of the court (in *People v. Sands*, 1 Johns. (N. Y.) 78), that the question whether it was a nuisance or not, depends upon the manner in which it is kept. Because there might be a building so secure and a method of keeping it so careful as that danger would not be apprehended," &c. If the conclusion of the court had been, that the powder house in question was so constructed that it was liable to be exploded by lightning, and the fact that it was so exploded, was conclusive that it was not properly constructed, there would be "much more force in the reasoning of the court." But when the court undertakes to declare that it is impossible to protect a powder house from lightning, and bases its conclusion, that a powder house in a populous city is a nuisance *per se*, from such a premise, we are not prepared to assent, without some further reason. We do not know judicially that a powder magazine may not be constructed and so provided as to insure absolute security from lightning. We do not think the criticism upon the argument of Chief Justice KENT is well maintained.

In the case of *Wilson v. Phoenix Powder Mfg. Co.*, 40 West Va. 413, (52 Am. St. Rep. 890), it was declared that the manufacture and keeping of quantities of gunpowder, nitroglycerine and other explosives in, or dangerously near to, public places, such as towns or highways, is a public nuisance and indictable as such. \* \* \* Negligence is no material element," &c. It will be observed that "manufacturing and keeping of large quantities of gunpowder" was declared to be a nuisance. It was a manufactory of powder as well as the keeping of powder, that exploded in this case. We will not discuss the question of the manufacturing of explosives, and refer to the case for the purpose of considering some of the statements and propositions of the court. It is

[Kinney v. Koopman & Gerdes; Rudder v. Koopman & Gerdes.]

said: "Now, if this mill were located in a secluded place, and removed from highways, being in itself a lawful business, the case would be different; it would not be a public nuisance, and to recover injury from an explosion, I apprehend, the plaintiff must show negligence on the defendant's part." If the thing be a nuisance *per se*, and injury results to another's premises, no rule of law requires evidence of negligence. A private nuisance *per se* is actionable as much so as a public nuisance. The only difference is, that in order to maintain an action in his individual name, he must show an injury not common to others. Whatever constitutes a public nuisance as to the public, will constitute a private nuisance, if established so as to have the same effect upon the premises or health of a private person, as it would have upon the public, if established in a city or highway. The constituents and definitions of a nuisance, whether public or private, are the same. It becomes a public or private nuisance as it affects the public, or the individual only, but we do not see how the fact that the "place" is public, can determine the "thing" to be a nuisance *per se*. Certainly the place does not bring it within the common law definition. The opinion, referring to the case of *People v. Sands*, 1 Johns. 78, *supra*, says later New York cases have overruled it. We presume the court referred to the case of *Heeg v. Licht*, 80 N. Y. 579, and *Myers v. Malcolm*, 6 Hill, 292, as these are the only New York cases cited. The case of *Heeg v. Licht, supra*, (36 Am. Rep. 654), has been cited in most of the decisions which hold that a powder magazine erected in a public place, or near the premises of another, in which powder is kept, is a nuisance *per se*, as supporting that proposition. We do not fully and clearly apprehend all the principles intended to be laid down as applicable to the facts in the case of *Heeg v. Licht*. It was admitted that the defendant had gunpowder stored in his magazine, that it exploded and caused the damage to the buildings of the plaintiff. The trial court instructed the jury that plaintiff could not recover unless they found that the defendant "carelessly and negligently kept the gunpowder on his premises." It was held on appeal that "this charge was not warranted by the facts." The trial court refused to instruct the jury "that the powder magazine was danger-

ous in itself to plaintiff and his property and was a private nuisance," &c. On appeal, it was held that this charge was properly refused. The case then is this: The defendant stored gunpowder and other explosives in a magazine in such quantities and close contiguity to the building of the plaintiff, that an explosion was liable to damage and did damage the plaintiff and his property. On these undisputed facts it was held on the one hand that the facts did not warrant the court to charge the jury, that plaintiff "could not recover unless he showed negligence;" and on the other, that these facts did not show that "the powder magazine was dangerous in itself to plaintiff and his property, and was a private nuisance," &c. As we read the case, it was disposed of in the following proposition: "The keeping or manufacturing of gunpowder or of fire works does not necessarily constitute a nuisance *per se*. That depends upon the locality, the quantity, and the surrounding circumstances, and not entirely upon the degree of care used. In the case at bar, it should have been left for the jury to determine whether from the dangerous character of the defendant's business, the proximity to other buildings, and all the facts proved upon the trial, the defendant was chargeable with maintaining a private nuisance," &c. Certainly nothing can be found here which authorizes, as a legal conclusion, from locality and quantity, only, that storing of gunpowder is a nuisance *per se*. There must be "other surrounding circumstances," and it depends upon the facts of the case whether the party is guilty of maintaining a nuisance.

In the case of *Cosulich v. Standard Oil Co.*, 122 N. Y. 118, (19 Am. St. Rep. 475), the damages resulted from an explosion of petrolium. The court held that the business of the defendant was lawful, and that it was incumbent upon the plaintiff to show a want of due care.

In the case of *Walker v. Chicago, &c. R'y Co.*, 71 Iowa, 658, the damages resulted from an explosion of dynamite then on a car in defendant's yard. The evidence showed that the dynamite exploded and injured the property of plaintiff. It was held that the burden was on plaintiff to show, that the place where stored was an improper place.

The case of *Judson v. Giant Powder Co.*, 107 Cal. 549,

(29 L. R. A. 718), was for the recovery of damages resulting from an explosion of dynamite and nitroglycerine stored in a magazine. The complaint averred negligence, and upon the issue thus made, the trial was had. There was expert evidence tending to show, that by the exercise of proper precaution an explosion could be avoided. An important rule laid down by the court is, that proof of the explosion raises, *prima facie*, a presumption of negligence and places the burden upon the defendant to overcome it. There are many citations in the notes to the report of the case in L. R. A., *supra*.

In the case of *People v. Sands*, 1 Johns. 78, (3 Am. Dec. 296), the defendant was indicted for a nuisance for keeping fifty barrels of gun powder near the dwelling houses of divers good citizens and near a certain public street in the city of Brooklyn, &c. The indictment was held bad, for the reason that it failed to charge that the gunpowder was negligently or improvidently kept. All the authorities which have referred to this case, expressly or impliedly concede, that it decides that the keeping of gun powder in large quantities in a public place in a city, is not a nuisance *per se*. The West Virginia case cited above says it was overruled by later New York cases. We have been unable to find the cases overruling it. The Tennessee case, *supra*, criticises the opinion of Chief Justice KENT, holding that the indictment was bad. In referring to the case decided by HOLT, C. J., while stating that it had been loosely reported, Chief Justice KENT first quoted the principle decided, and then used the following language : "This case as far as it is any authority, goes in confirmation of the principle, that the time, place and manner are all important and essential in determining whether a powder house amounts to a nuisance."

The case of *Meyers v. Malcolm*, 6 Hill, 292, (41 Am. Dec. 744), has been cited as not sustaining the case of *People v. Sands*, 1 Johns. 78, *supra*. Our reading of the case is different. We think it not only approves of the principles announced, but cites it as authority. In the case of *Meyers v. Malcolm*, the action was for damages resulting from an explosion of six hundred pounds of powder in kegs in the upper story of a wooden building, near several wooden buildings, some of which were inhabited. On the trial it was left to the jury to deter-

mine "whether the conduct of the defendants in regard to the manner of depositing the powder, was such as to render them guilty of a public nuisance." And further commenting, it was the opinion of the court, that "the most satisfactory position for the plaintiff, and the one most difficult to be answered by the defendants is the ground, that the depositing and keeping of the powder in the *exposed situation* [we italicize] described by the witnesses amounted to a public nuisance." Says the court: "Upon the facts disclosed in this case, it cannot be doubted that the gun powder was deposited in a building insufficiently secured and protected, and altogether unfit for the safe keeping of so large a quantity of the article." This opinion certainly gives no support to the position, that the storing of gun powder in a public place is *per se* a public nuisance. The case is directly in support of the principle, that the "time, place and manner" are important and essential in determining whether a powder house amounts to a nuisance, and accords with the rule declared in *Heeg v. Licht*, 80 N. Y., *supra*.

The case of *Bradley v. The People*, 56 Barb. (N. Y.) 72, referred to in some of the decisions as supporting the proposition, that the keeping of gun powder in large quantities in populous places is a nuisance *per se*, to our understanding of the decision is an authority to the contrary. This decision not only cites *People v. Sands*, *supra*, and *Meyers v. Malcolm*, *supra*, as authority, but the decision itself is rested upon these two cases. Says the court: "The careless and improper manner of building and continuing the powder house and keeping the powder therein are fully charged;" and that was the real issue tried. This case was reversed, because the trial court admitted testimony for the prosecution, to show in what manner the government magazines were constructed. In commenting on this testimony the court used the following language: "And if it was intended to show that it was the duty of the defendants to build theirs in the same way, it was incompetent; for to hold that all dealers in gun powder, who have occasion to keep it in quantities, are bound to construct their storehouses for that purpose in the same way that is deemed necessary in forts and arsenals, would virtually interdict the traffic in the article by private persons, who could not afford the expense necessary to comply with any

such requirement. With the selection of a suitable location I think a much less expensive warehouse would be sufficient. The court below doubtless admitted the testimony because it was thought to be material, and that it would aid the jury in determining the question of negligence on the part of the defendants; and it may have had that effect. At all events I cannot see that it did not affect the result."

It seems clear that in New York the case of *People v. Sands*, is adhered to as sound law.

In the case of *Regina v. Lister*, Dearsly & Bell's Crown Cases, 209, decided in 1857, the question is discussed at some length. The defendant was indicted for a public nuisance. The indictment charged that the defendant "unlawfully, knowingly and willfully did deposit in a warehouse near to divers streets and highways and dwelling houses, &c., large and excessive quantities of a dangerous, ignitable and explosive fluid, called wood naptha, * * * and did keep the said fluid in such large, excessive and dangerous quantities, whereby the queen's subjects passing along the said streets and highways and residing in said dwelling houses were in great danger of their lives and property," &c. This indictment was held good. It was shown that wood naptha was more dangerous and explosive than gun powder. This case more directly supports the proposition that the keeping of gun powder in large quantities in a populous place is a nuisance *per se* than any other English authority we have been able to find. The court used the following language: "Upon the trial of such indictments we consider that it is a question of fact for the jury, whether the keeping and depositing, or the manufacturing of such substances, really does create danger to life and property as alleged—and this must be a question of degree, depending on the circumstances of each particular case. No general rule of law can be laid down beyond this, that the substantial allegations in the indictment must be substantially proved. In the present case we think that sufficient, although not necessarily conclusive, evidence was adduced, and that although the judge would not have been justified in directing a verdict of guilty to be entered without taking the opinion of the jury upon it, he was fully justified in telling the jury (which he appears to have done) that if

the depositing and keeping the naptha in the manner described, coupled with its liability to ignition, *ab extra*, created a danger to life and property to the degree alleged, they might find a verdict of guilty." The predominant principle declared in the opinion is, that "the substance must be of such a nature, and kept in such large quantities, and under such local circumstances, as to create real danger to life and property."

In the older edition of Russell on Crimes, section 321, the following language is used: "*It seems* [we italicize] that erecting gun powder mills, or keeping gun powder magazines near a town is a nuisance by the common law, for which an indictment or information will lie." In the International edition of Russell on Crimes, the phraseology is changed, and the author is made to say: "Erecting gun powder mills, or keeping gun powder magazines near a town is a nuisance by the common law, for which an indictment or information will lie." We are of opinion that the author himself knew and weighed the effect of words, and used those which conveyed his exact meaning. An examination of the cases cited to the text shows that the principle was recognized that trades which were necessary and lawful of themselves were not to be interfered with by indictment or information, unless they come within the definition of a public nuisance. Dealing in gun powder was a lawful business. Being a lawful business, the question was, whether the keeping of gun powder in populous places or near highways was an indictable offense under any circumstances. One of the earliest cases reported was that of *Rex v. Taylor*, 2 Strange, 1167, where "upon affidavits of the defendant keeping great quantities of gun powder to the endangering the church and houses where he lived an information was granted." This is the entire report of the case. What the evidence showed or the result of the case, is not reported. The affidavit was, the keeping of the gun powder to the endangering of the church and houses. No doubt the information was properly granted, and if the proof showed it was so kept as to endanger "the church and houses," it was a nuisance. Another case was that of *Rex v. Williams*, in which the defendant was convicted of a nuisance for keeping four hundred barrels of gun powder near the town of Bradford. How this powder was kept is not

stated. Upon these cases, for they are the cases cited to support the text, Russell, *supra*, announced the proposition: "It seems that erecting gun powder mills or keeping magazines near a town is a nuisance at common law;" and this view of the principle is emphasized in the case of *Crowder v. Tinkler*, 19 Vesey, 616. In the latter case, an injunction was prayed for. The court ascertained, from an *ex parte* investigation, that the defendant might keep as much as twelve hundred pounds safely, for the demands of trade, and made an order allowing this quantity to be kept, until a trial could be had by a jury. It is important to notice the real issue he submitted to the jury. It was not merely whether the defendant manufactured or stored large quantities of gun powder in the place where it was charged to have been done, upon which the court would pronounce as a conclusion of law that such use would be a nuisance *per se*, but the jury were required to determine the question of danger. And in the case of *Regina v. Lister*, Crown Cas., *supra*, the direct question arose as to whether the finding of the jury should be limited merely to the keeping of the explosive as charged, or should further find, that such keeping was dangerous, and it was held, that under proper instructions, it devolved upon the jury to determine not only the fact of keeping the explosive, but whether the facts showed such keeping was dangerous to property or life. These cases are in line with the rule declared in New York and in other courts; and that is, that when gun powder is so manufactured or stored as to endanger life or property, such use is a nuisance. Whether it is so or not, is a question of fact, dependent upon the "place, manner and surrounding circumstances," to be ascertained by the jury.

In Wharton Cr. Law, section 2376, it is said: "The mere keeping of a large quantity of gun powder in a house, near dwelling houses and a public street, does not constitute a nuisance; but keeping it negligently and improvidently does."

In Wood on the Law of Nuisance, section 140, it is said: "In determining the question, the locality, the quantity and the manner of keeping will all be considered, as well as the nature of the explosive, and its liability to accidental explosion;" and as supporting the general principle, the cases of *People v. Sands*, 1 Johns.

78, *supra*; *Myers v. Malcolm*, 6 Hill, *supra*, and *Heeg v. Licht*, *supra*, are cited as authorities.

The question came before the court in the case of *Dumosnil v. Dupont*, 18 B. Monroe, 800, (68 Am. Dec. 750), upon a bill filed to abate the keeping of a powder house in which large quantities of powder were kept. The answer of respondents averred that "their magazine is well constructed, and is protected against accidents by secure fencing, lightning rods, and by the constant presence of a trusty man; that it stands in a sparsely settled neighborhood," etc. These statements were proven. The evidence was conflicting as to the effects of an explosion. The question upon which the case was determined was whether the keeping of the powder house in which large quantities of powder were stored, was a nuisance *per se*. Referring to the opinion of Chief Justice KENT in the case of *People v. Sands*, *supra*, the court declared that "the point had been conclusively settled by very high judicial authority." The further statement is made, "that the only adjudged case we have met with in which the principle seems to have been differently settled is that of *Cheatham v. Shearon*, 1 Swan, 213" (55 Am. Dec. 734, *supra*), and it declared that "the principles and reasoning upon which the decision rests are opposed to the unbroken current of modern authority, English and American, upon the subject."

In the case of *Wright v. Chicago & Northwestern Railway*, 27 Ill. 200, after discussing the liability of parties for damages resulting from keeping explosive materials, the court uses the following language: "We are content with the rule, that the keeping of explosives unsafely guarded, in such quantities as to be dangerous to persons and property, near a frequented street, or other public place, or in the vicinity of the residences or places of business of others, under circumstances that threaten calamity to the person or property of others, the consequences thereof being an explosion of such articles which causes damage to the person or property of another, gives the latter a right of action to recover from the person keeping the explosive such damages as would not have happened in their absence," citing *Meyers v. Malcolm*, 6 Hill, *supra*, and Cooley on Torts, 607.

In the case of *Cook v. Anderson*, 85 Ala. 99, the court

[Kinney v. Koopman & Gerdes; Rudder v. Koopman & Gerdes.]

used the following language: "Keeping explosive substances in large quantities in the vicinity of dwelling houses or places of business, is ordinarily regarded a nuisance; whether so or not being dependent upon the locality, the quantity, and the surrounding circumstances." What was dependent "upon the locality, the quantity, and the surrounding circumstances?" There is but one answer, and that is, whether "the keeping of explosive substances in large quantities in the vicinity of dwelling houses or places of business" was a nuisance. Again the terms, "the locality, the quantity, and the surrounding circumstances," are identical with those used in *Heeg v. Licht*, 80 N. Y. 579, *supra*, and no doubt were taken from it or from Wood on Nuisance, section 140, and used in the same sense.

This question came before us again in the case of *Collins v. Ala. Gr. So. R. R. Co.*, 104 Ala. 390, where the principle is stated as follows: "The fact that defendant had in its warehouse 1,200 lbs. of powder is not, of itself, such evidence of negligence as entitles the plaintiff to recover. While it may be said that the keeping of large quantities of explosive material in a building in a populous town or city may be a nuisance, yet, the fact that it is such or not, must depend on the locality, quantity of material stored, and the circumstances. Negligence in keeping it, or in the manner of its keeping, is requisite to impose a liability to answer in damages for injuries caused by an accidental explosion of fire."

After a most careful examination of the common law text books and decisions, we have no doubt of the correctness of our conclusion in the foregoing cases, and which exactly accords with the law as declared in *People v. Sands, supra*. Steam power, gas, electricity, dynamite, gunpowder are in daily use, and have become indispensable to the convenience of the public, and for the public defense. Invention of man and advancement in science has enabled the manufacturer of, or dealer in, these articles to provide the public or the individual with almost if not altogether absolute protection against danger or hurt from explosion. And even had the manufacturing and storage of gunpowder, in its early history, been a nuisance at common law, the common law definition of a nuisance would not include gunpowder at this day.

[Rudder v. Koopman & Gerdes.]

There is another aspect in which the record presents the plaintiffs' cause of action. Section 4093 of the Criminal Code of 1886, quoted *supra*, makes the keeping of more than fifty pounds of gunpowder for sale or for use within the corporate limits of a town or city, a misdemeanor. We are of opinion that if the defendant kept gunpowder in violation of this statute, and the plaintiff, being a person intended to be protected by the statute, was damaged in consequence of such violation, the defendant would be liable to him. This is the rule declared in *Laflin Powder Co. v. Tearney*, 7 L. R. A., *supra*, and in the case of *Ferguson v. Gies*, 21 Am. St. Rep. 576. The same rule was declared in this State in the case of *Grey v. Mobile Trade Co.*, 55 Ala. 387, 407. Of course if the jury should find, as some of the evidence tends to show, that plaintiffs' building caught on fire from other causes and would have been destroyed independent of the explosion, it could not be said the explosion of the gunpowder was the proximate cause of the damage.

We are of opinion that a count *prima facie* sufficiently shows a want of due care, which charges the storing of large quantities of gunpowder in a wooden building in a populous place in the city of Cullman. The demurrer was properly sustained to the count which merely charged the storing of gunpowder and its explosion without further averment showing that on account of location, quantity and surrounding circumstances it was dangerous. Some of the instructions of the court were not in accordance with correct legal principles as applied to the evidence.

Reversed and remanded.

*Action to recover Damages resulting from Explosion of Gunpowder.*

