# Rudder *v.* Koopman & Gerdes.

*Action to recover Damages resulting from Explosion of Gunpowder.*

1. *Nuisance; storing of gunpowder and dynamite; liability therefor.* The storing of large quantities of gunpowder and dynamite in a wooden building, located within the corporate limits of a city or town

[Rudder v. Koopman & Gerdes.]

in a thickly settled or populated portion of said city or town, and in proximity to many buildings, constitutes a nuisance, rendering the owner thereof responsible for injuries resulting from its explosion.

2. *Same; same; sufficiency of complaint.*—In an action to recover damages to plaintiff's building, resulting from the explosion of gunpowder and dynamite, a complaint which avers that the defendant stored large quantities of dynamite and gunpowder in a wooden building in a thickly settled portion of an incorporated town, in proximity to plaintiff's building, and that the defendant's building having caught fire, the dynamite and powder stored therein exploded with such force and violence as to cast fire brands upon plaintiff's building, whereby it and its contents were set on fire, and consumed, sufficiently states a cause of action, without averring specific acts of negligence on the part of the defendants in the manner or mode of keeping the dynamite and gunpowder.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. H. C. SPEAKE.

The appellant, Josephine Rudder, brought the present action on March 15, 1894, against the appellants, Mary A. Koopman and John Gerdes, partners in business under the firm name of Koopman & Gerdes, to recover damages.

The original complaint was as follows: "The plaintiff claims of the defendants one thousand dollars, as damages, for that heretofore, to-wit, on or about the 4th day of March, 1894, the said defendants kept stored or deposited in the incorporated town of Cullman in said State and county, dynamite, a highly explosive and dangerous article, in very dangerous quantities, which were well known to said defendants, and on or about the said day and date, the said dynamite did explode, and cast fire, or coals, or burning brands, or timbers, upon the two-story wooden building of the plaintiff situated near to where said dynamite was stored or deposited, and by said explosion the same was set on fire and burned to the ground and wholly destroyed to the damage of the plaintiff of one thousand dollars, which sum this suit is brought to recover." To this complaint the defendant demurred upon the following grounds: "1. It is nowhere alleged in said complaint that the defendants negligently stored or deposited within the corporate limits of the incorporated town of Cullman any quantity of dynamite. 2. It is nowhere averred in said complaint that the defendants were guilty of negligence in having in their possesion the alleged dynamite. 3. It is nowhere averred in said

complaint that the said defendants negligently handled said dynamite, or were negligent in storing or keeping the same. 4. Because the facts showing the cause of the explosion of said dynamite are nowhere set out or averred in said complaint. 5. Because it is nowhere averred in said complaint that the defendants were negligent in having said dynamite in their possession, or in handling the same, or in the manner in which they had the same stored. 6. Because no such facts are averred in said complaint as either show, or tend to show, that the having of said dynamite stored in said alleged building was the proximate cause of the alleged damage." These de-murrers were sustained, and the original complaint was amended by the filing of other counts as follows: 1. "The plaintiff claims of the defendants the further sum of five thousand dollars as damages, and alleges, that the said defendants were in the possession and control of certain buildings and lots, and their appurtenances in the incorporated town of Cullman, said State and county, in a thickly settled part of said town, on and prior to the 4th day of March, 1894. That the defend-ants, well knowing, the highly explosive nature of and the immense power for injury in case of explosion of dynamite and powder, and especially when the same is kept in connection with the caps or fuse used in explod-ing the same, did, nevertheless, negligently, wrongfully, and injuriously keep a large amount, to-wit, four boxes of dynamite, and to-wit, one hundred pounds of powder, in connection thereto, or in the same box or can thereto, did also keep caps or fuse, upon the ignition or explosion of which the said dynamite would immediately explode ; and negligently, wrongfully, and injuriously allowed the dynamite and powder in such condition to remain in or on their said premises, so that on the day and date above set forth, their said building having caught fire, the said dynamite with the caps and fuse were ignited and ex-ploded with such force and violence that the burning shingles, or pieces of boards and timbers from the de-fendants' burning store were hurled or carried or thrown upon the plaintiff's building, or buildings adjoining plaintiff's building, neither of which were more than five hundred feet from the said building of the defendant, so that plaintiff's building with all its contents, to-wit, household goods, wares and merchandise were set on fire

and wholly consumed to her damage as aforesaid, hence this suit.

"2.   The plaintiff claims of the defendant the further sum of five thousand dollars, and alleges that the defendants were in the possession and control of certain houses and premises in the incorporated town of Cullman in said State and county, and in a thickly populated portion of said town, and while so possessing and controlling such premises they had stored therein, to-wit, on the 4th day of March, 1894, a large amount, to-wit, four boxes of dynamite with caps or fuses, and, to-wit, more than fifty pounds of gunpowder, the explosion of either of which the said defendants well knew would occasion great loss and damage to all the property adjoining in the immediate vicinity of their said premises where the same was stored ; and that on, to-wit, the said 4th day of March, 1894, a fire having originated in a building adjoining the building where said explosives were stored, and it being apparent and evident that the fire would soon catch or burn defendants' premises where such explosives were stored, and that thereby the same would be exploded, the said defendants, though ample time and opportunity were offered by the exercise of due care and diligence on their part so to do, wholly failed, neglected and refused to remove said explosives from the said place of deposit and to a place of safety from said fire, but wrongfully, negligently and injuriously allowed the same to remain until their premises took fire and burned and caused the said dynamite and gunpowder to explode, and by the force, power and violence of such explosion, threw burning fire brands or coals or pieces of burning timber upon the building of the plaintiff, or upon the building adjoining the buildings of the plaintiff, neither of such buildings being more than, to-wit, five hundred feet from the said buildings of the defendants, whereby the buildings of the plaintiff were set on fire and the same, with all their contents of household goods, furniture, goods, wares and merchandise, were wholly consumed and destroyed to her damage of five thousand dollars as aforesaid."

To the first count of the amended complaint the defendants demurred upon the following grounds : "1st. Because it is not sought to connect the defendants in any manner with negligence about the fire, which the com-

plaint alleges was the primary and approximate cause of the explosion. 2d. Because it is not alleged therein that the natural tendency of depositing the dynamite and caps or fuses together was to explode, or that the explosion was caused alone by so depositing them, but it is alleged in said complaint that the explosion was caused by a fire with which the defendants are in no manner connected." To the second count, the defendants demurred upon the following grounds: "1st. Because it is conceded therein that the storage of the explosive was legal, and bases the sole right for damage for the failure to remove the explosives, but does not state the defendants were guilty of any negligence in starting the fire, which, is alleged, originated on another's premises, and which it is alleged therein was the proximate cause of the explosion. 2d. Because, under the facts stated in said count, there was no duty resting upon the defendants to remove the said explosives." The demurrers to each of these counts were sustained. Thereupon the plaintiff offered to amend the complaint by the addition of the following count: "Count 4. The plaintiff claims of the defendants five thousand dollars as damages, because she says for that heretofore, to-wit, on or about the 4th of March, 1894, in the incorporated town of Cullman in said State and county, the defendants did store or deposit a large quantity of powder and dynamite, to-wit, one hundred pounds of powder and one hundred pounds of dynamite in a wooden building, which was near to and adjacent to several wooden buildings in or near a street in the town of Cullman, in a thickly inhabited portion of said town. That on the day above mentioned a fire originated in one of the wooden buildings near to the building wherein the defendants stored the said powder and dynamite. That in consequence thereof the said wooden building wherein the said powder and dynamite were stored caught on fire and the dynamite and powder therein exploded. That in consequence of said explosion large pieces of burning timbers and sparks and coals of fire were hurled in and upon the houses near thereto, and the plaintiff's house was burned, and the furniture therein destroyed; hence this suit." The court refused to allow the addition of this count, and to this action of the court the plaintiff duly excepted. The plaintiff then filed ten other counts. Each of these

counts sets forth the facts substantially as stated in the former counts of the complaint; basing plaintiff's right of action upon the wrongful storage of the powder and dynamite, and alleging the facts pertaining thereto so as to cover the different phases of the case. Under the opinion on the present appeal, it is deemed unnecessary to set out these different counts at length. To each of these counts the defendants demurred, setting up as causes of demurrer substantially the same grounds upon which are based the demurrers to the other counts, which are set forth above. The court sustained each of the defendant's demurrers to the several counts of the complaint; and the plaintiff declining to amend or to plead further, judgment was rendered for the defendants. From this judgment the plaintiff appeals, and assigns as error the several rulings of the trial court in sustaining the several demurrers interposed by the defendants to the plaintiff's complaint, and to each count thereof, and in refusing to allow the plaintiff to file the additional count offered.

LEA & McMASTER, for appellant, filed the same brief and argument in this case as in the preceding case.

GEORGE H. PARKER and J. M. FALKNER, contra, filed the same brief and argument in this case in the preceding case.

HEAD, J.—The important question presented by this record is the liability vel non of the defendants for damage done to plaintiff's building and contents, by the explosion of large quantities of dynamite and gun powder stored and kept by defendants, in their wooden building located within the corporate limits of the town of Cullman, in a thickly settled and populated portion of said town, where there were many buildings, including plaintiff's, in proximity to defendants' building where the explosives were kept.

Without fault on the part of defendants, so far as the allegations show, a building near to defendants' took fire and was consumed. The fire was communicated to defendants' building, consuming it and exploding the dynamite and powder. By reason of the explosion,

22

brands were cast upon the plaintiff's building, igniting and consuming it, with its contents.

It is not alleged that the gun powder was kept for sale or use, hence the case is not to be influenced by the penal statute embodied in section 4093 of the Code of 1886.

The question then is, whether, upon the facts stated, the defendants were guilty of maintaining a nuisance at common law, resulting in special injury to the plaintiff.

We deem it unnecessary to lay down or discuss the general principles underlying offenses of maintaining nusiances, and the rights and remedies of individuals resulting therefrom. The precise question now before us, in reference to the keeping of explosives and private injuries resulting therefrom, has been frequently before the courts, and we will content ourselves with a notice of the adjudged cases touching that particular subject.

The subject was, we think, first treated, in this country, in 1806, in *People v. Sands*, 1 Johnson (N. Y.) 78. The defendants were indicted for keeping a nuisance. The indictment, as summarized by the court, charged that the defendants, at Brooklyn, kept fifty barrels of gunpowder in a house, near dwelling houses and near the public street. On motion in arrest of judgment, the indictment was held bad. Justice THOMPSON said: "The indictment is not to be extended by inference or implication. It cannot, therefore, be intended that the house was insufficient to the purpose for which it was appropriated, or that due and ordinary care was not used in keeping the powder. If so, it appears to me to be too broad a rule to adopt, that fifty barrels of gunpowder, kept in a proper house, near dwelling houses, and near a public street, shall *per se* be deemed a public nuisance. Such circumstances may exist as to make it a nuisance ; but those circumstances must be stated upon the indictment.—1 Burr. 337." LIVINGSTON, J., said : "Whether a powder-house, near private dwellings and a public highway, be a common nuisance, is the only question on the first count of this indictment. I say powder-house, because, although the building is not described as such, it may fairly be presumed from the indictment to have been erected and maintained for no other purpose. If it had been a dwelling, or any edifice in itself improper for keeping this article, it would have been so stated. In addition to this, the fact of its

[Rudder v. Koopman & Gerdes.]

being a brick building, constructed for the storing of powder, and secured by conductors, and every other usual guard against accident, has come to my knowledge in such a way as will justify my now taking notice of it.

"This is the second indictment tried before me for this nuisance. On the first trial it appeared that the store was strong, built of most suitable material, and well defended against every probable danger; nor was there any pretense of its being negligently or improvidently kept.

"The right of manufacturing and vending an article so essential to public defense, and of such extensive private consumption, will not be denied. From this must follow the right of storing it either for sale, or until it be wanted for national or other purposes. The only difficulty is, to say how and where it shall be placed; here no other rule can be prescribed but by the Legislature without excluding its use altogether, than that of keeping it anywhere, at the option of its owner; providing the lives of the surrounding or passing inhabitants be not thereby exposed to probable danger, either from the place, or manner of keeping it. If mere possible injury be a ground for prosecution, it will amount to a total proscription of the commodity, unless in very small quantities indeed; for who can say that lives may not be lost, or houses destroyed, by the explosion of the hundredth part of the quantity of which is alleged to have been stored in this building; and yet, because such an event be not impossible, a shopkeeper at Brooklyn would hardly incur the penalties of a nuisance by keeping a reasonable quantity at a time to retail, though more real danger is to be apprehended from such practice, than from much larger quantities in a powder magazine. In the latter place, it is only visited in the day, and by persons who will use more than common precaution, from the very circumstance of there being more than an ordinary quantity collected in one spot, and as they will inevitably be the first and certain victims of an explosion. Except when thus visited, there can be but little or no danger. It is never approached by fire, and from the effects of lightning it is protected by its rods. A safer mode of keeping this article than in a building thus constructed, cannot well be devised; but

if it be not permitted to place them near to any dwellings or highways, which, by the way, is not a very definite term, who would be at the expense of their erection? If a desert spot, at a great distance from any habitation and road, must be selected, the additional expense of transportation, and danger of robbery, will deter every one from providing such repositories; the consequence of which will be, that it must be kept in houses or places less safe to those in its vicinity.

"The danger of a magazine's exploding, when properly built and secured, is remote indeed; so much so, that a jury of Queen's county, by whom the first traverse was tried, after a very long examination, acquitted the defendants on that very ground; for only one witness was produced who had ever heard of that event, and that but once. On the trial of the second indictment, by a jury from King's county, that point was not submitted to them, because a majority of the court determined, as a question of law, that a powder-house thus situated, however built or maintained, was a nuisance, so that the fact of its erection was alone before them. I was well satisfied myself from the former investigation, that the probability of an explosion was too remote to justify the apprehensions which many of the witnesses, who lived in the neighborhood, seemed very honestly to entertain. The jury, who acquitted the defendants, were of the same opinion, though many of them must frequently have passed the noxious building on their way to and from the New York market. This opinion acquires some strength from the silence of our books, and as there does not appear among the various printed forms of indictments a single precedent to suit the present case. The district attorney produced none, and those to which he referred only established what was not denied, that animals which it is lawful to keep, and which are not nuisances *per se*, may under certain circumstances become so. Thus bulls, dogs, and many other beasts, if particularly vicious, or dangerous, and carelessly kept, are regarded as common nuisances. Precisely on this footing stand powder-houses. Of themselves they are innoxious, although not distant from mansions or highways, unless negligently secured or attended.

"The only case, 12 Mod. 342, which bears the sem-

blance of an authority, was decided at *nisi prius*; for that of *Rex v. Taylor*, 2 Str. 1167, does not state where or how the powder-house was kept. And whether the house, whose owner was indicted, was a private dwelling, or one erected for the purpose and well secured, does not sufficiently appear. The point resolved, however, was not that a powder-magazine was not, in itself, a nuisance, but that to render it such, there must be 'apparent danger, or mischief already done;' for, as Lord HOLT well remarks, 'though gun powder be a necessary thing, and for the defense of the kingdom, yet if it be kept in such a place as is dangerous to the inhabitants, or passengers, it will be a nuisance.' This is a rule too reasonable not to command our ready assent, and if the jury had passed on this point, there would be no hardship in rendering judgment on the verdict; but they were told by me, in compliance with the unanimous opinion of the magistrates, who sat in the oyer and terminer, that a powder-house was, *ipso facto*, a nuisance, and not a witness was examined to show the apparent danger of the one in question. The transaction having passed exactly as is here stated, it would be folly to suppose, contrary to what I know to be the truth, that the defendants were convicted upon the probable danger to which the public were exposed, especially when the form of the indictment is not such as necessarily to lead to this conclusion. The mere laying a thing to be *ad commune nocumentum* is not sufficient, but the court must examine, says Mr. Justice FOWLER, whether the fact laid implies a nuisance.

"If the rule of Lord HOLT, and which is here adopted, be not a safe one, it is better that the legislature should interfere, than to put these buildings under the unlimited control of a jury of the vicinage, who, however honest, will be more or less influenced by imaginary fears, which artful men will not fail to cherish and increase. Both in England and in this country, such interference has taken place, which furnishes a pretty strong argument against powder-houses being nuisances at common law. By the stat. 12 Geo. III, c. 61, the making, keeping and transporting of gun powder, is regulated under heavy and various penalties. This act, which has not declared any of the offenses therein enumerated a common nuisance, also directs that powder-

[Rudder v. Koopman & Gerdes.]

houses should be erected of the same materials of which this is composed.

"The only act we have relating to this matter, is confined in its operation to the city of New York; the legislature not having thought proper to extend its provisions to other districts of the State. This statute prescribes penalties for keeping more than a certain quantity in any one place in the city, except in the public magazine at Freshwater, or in a different manner than is there enjoined, and regulates the manner of its carriage through the city; but also omits making any of the offenses common nuisances. It is not hence contended, that keeping this article in a powder-house properly constructed, may not, in cases of gross negligence, become dangerous, and a nuisance; but that the storing of it in this way is lawful in itself, and not in every instance a nuisance, on account of the building being in the neighborhood of dwelling houses or contiguous to a highway.

"The only difficulty I feel in this cause, arises from the manner in which it is brought before us, and not from any intricacy in the real question, which, from what passed at the trial, I know it was the intention of both parties to submit. But besides the answers already given to the argument drawn from a probability that the jury proceeded on the ground of negligence, there is another, which is suggested by a palpable defect in the indictment. It states that the defendants did 'unlawfully receive and keep, and yet do keep, in their house, fifty barrels of gun powder,' which is the only alleged cause of the hazard complained of. Now, if it be not unlawful, as has been shown, to store gun powder in this way, we can not give judgment against the defendants, without recognizing a principle, which must end in the demolition of every powder-magazine in this State. It is essential that every indictment of this kind, where the principal act is lawful, should state with precision what has rendered it otherwise; that is, from what causes arise the dangers which it is contemplated to suppress. In this instance, the prosecutor ought to have alleged a want of care or some negligence in the manner of its storing or keeping; because, whether a lawful act becomes a nuisance in a particular way, or in consequence of inattention, is oftentimes a question of

[Rudder v. Koopman & Gerdes.]

law, on which a defendant is not obliged to acquiesce in the opinion of a jury. But, of the judgment of the court he will be debarred, if bills may be drawn in this general way, and every defect supplied by presumptions (which, in this case, are directly against the truth), that everything was proved necessary to constitute a nuisance. I take no notice of the second count, because no attempt was made to support it.

"My opinion is, that it is not unlawful, except in the city of New York, to keep gunpowder in a magazine properly constructed and secured, though the same be near to dwelling houses and a public street; but that if, by negligence or want of care, it becomes dangerous, the owner may be indicted; and further, that such negligence, being the gist of the offense, should appear of record, so that the grounds on which a jury proceed may not be a matter of conjecture, but be tested by the acts laid in the indictment. No negligence or want of care being stated, and knowing, judicially, that none was proved, I am of opinion that judgment must be arrested." KENT, C. J., also delivered an opinion in the case, substantially in line with the argument of the other judges. TOMPKINS, J., did not sit, and SPENCER, J., delivered a dissenting opinion.

In *Myers v. Malcolm, et al.*, 6 Hill, 292, in 1844, the question came before the Supreme Court of New York, in an action on the case for an injury to plaintiff by the explosion of gunpowder belonging to the defendants. The defendants deposited about six hundred pounds of powder in kegs in the upper story of a wooden building used as a carpenter's shop. Near this shop was a lumber yard and several wooden buildings, some of which were inhabited dwellings. No fire was allowed in the building in the day time and it was locked up each night. The shop took fire in the night time, and during the progress of the fire the powder exploded, killing several persons and wounding others, among whom was plaintiff. NELSON, C. J., said: "The charge of the circuit judge, as detailed in the bill of exceptions, is not very explicit, but we may fairly assume, I think, that the case was put to the jury on the question whether the conduct of the defendants, in regard to the manner of depositing the powder, was such as to render them guilty of a public nuisance; and if that point has been

properly determined in favor of the plaintiff, then I apprehend his right to private damages must follow as a corollary. In this view, the question of negligence on the part of the defendants, except so far as it may be necessarily involved in the question of nuisance, has very little, if anything, to do with the case. But, on the other hand, if the defendants' conduct was not sufficient to render them chargeable with the offense mentioned, then the whole gist of the action lies in negligence, and the inquiry might arise whether this was so connected with the injury as to render the defendants liable. Perhaps evidence enough was given at the trial to have justified the judge in putting the case to the jury in either aspect; though the most satisfactory position for the plaintiff, I am inclined to think, and the one most difficult to be answered by the defendants, is the ground that the depositing and keeping of the powder in the exposed situation described by the witnesses, amounted to a public nuisance, and that any individual sustaining a special injury from the act, was entitled to his private damages.

"It was not doubted in the case of *The People v. Sands*, 1 Johns. 78 (3 Am. Dec. 286), that the act of *carelessly* keeping fifty barrels of gunpowder in a house in a village of Brooklyn, was a nuisance at common law. The allegation in the indictment there was, that the defendants kept the barrels 'in a certain house, near the dwelling houses of divers good citizens, and near a certain public street,' without otherwise characterizing the manner of keeping the article; and, upon the principle that nothing will be intended or inferred to support an indictment, the court said, for aught they could see, the house might have been one built and secured for the very purpose of keeping powder in such a way as not to expose the neighborhood. SPENCER, J., dissented, holding that enough appeared to make the question one for the jury to settle, who could inquire into the various circumstances of place, quantity, exposed situation of the neighborhood, etc.

"In a case before Lord HOLT, *Anonymous*, 12 Mod. 342, the defendant was indicted and convicted for keeping several barrels of gunpowder in a house in Brentford Town, sometimes two days, and sometimes a week, till he could conveniently send them to London. And it was

[Rudder v. Koopman & Gerdes.]

there resolved, 'that though gunpowder be a necessary thing and for defense of the kingdom, yet if it be kept in such a place as it is dangerous to the inhabitants or passengers, it will be a nuisance.' In *Rex v. Taylor*, 2 Stra. 1168, the king's bench granted an information against the defendant for a nuisance, upon 'affidavits of his keeping great quantities of gunpowder, to the endangering of the church and houses where he lived,' or, as it should have been expressed, according to Burns, 'to the endangering of the lives of his majesty's subjects.'—2 Burns' Just. 667, 668, 1 Russ. on Cr. 297, and note (o).

"I think the jury would have been well warranted in finding the defendants guilty of the offense, upon the facts disclosed in this case, as it cannot be doubted that the gunpowder was deposited in a building insufficiently secured and protected, and altogether unfit for the safe keeping of so large a quantity of the article. The situation of the building in other respects, moreover, was such as to render the gunpowder dangerous as to the lives of the citizens; for an explosion, either by accident or design, at any period of time after the deposit, would, in all human probability, have proved destructive to more or less of the inhabitants residing in the neighborhood.

"Assuming that the jury were justified in coming to this conclusion, the authorities are abundant to show that the defendants were answerable to the plaintiff for the personal injury occasioned by the explosion. The principle is stated by ABBOTT, C. J., in *Duncan v. Thwaites*, 3 Barn. & Cress. 556. He there said: 'I take it to be a general rule that a party who sustains a special and particular injury by an act which is unlawful on the ground of public injury, may maintain an action for his own special injury.' The following cases exemplify and apply the principle, viz.: *Rose v. Miles*, 4 Mau. & Sel. 101; *Henly v. The Mayor*, etc. *of Lyme Regis*, 5 Bing. 91; s. c., 3 Barn. & Adol. 77; s. c., in error, 1 Bing. N. Cas. 222; *Pierce v. Dart*, 7 Cow. 609; *Lansing v. Smith*, 8 Id. 146; s. c., in error, 4 Wend. 25, *per* Walworth, Chancellor, (21 Am. Dec. 89); *Mills v. Hall*, 9 Id. 315 (24 Am. Dec. 160)."

In *Heeg v. Licht*, 80 N. Y. 579, (36 Am. Rep. 654), MILLER, J., said: "This action is sought to be main-

tained upon the ground that the manufacturing and storing of fireworks, and the use and keeping of materials of a dangerous and explosive character for that purpose, constituted a private nuisance for which the defendant was liable to respond in damages, without regard to the question whether he was chargeable with carelessness or negligence. The defendant had constructed a powder magazine upon his premises, with the usual safeguards, in which he kept stored a quantity of powder, which, without any apparent cause, exploded and caused the injury complained of. The judge upon trial charged the jury that they must find for the defendant, unless they found that the defendant carelessly and negligently kept the gunpowder upon his premises. The judge refused to charge that the powder magazine was dangerous in itself to plaintiff and his property, and was a private nuisance, and the defendant was liable to plaintiff whether it was carelessly kept or not; and the plaintiff duly excepted to the charge and the refusal to charge.

"We think that the charge made was erroneous and not warranted by the facts presented upon the trial. The defendant had erected a building and stored materials therein, which from their character were liable to and actually did explode, causing injury to the plaintiff. The fact that the explosion took place tends to establish that the magazine was dangerous and liable to cause damage to the property of persons residing in the vicinity. The locality of works of this description must depend upon the neighborhood in which they are situated. In a city, with buildings immediately contiguous and persons constantly passing, there could be no question that such an erection would be unlawful and unauthorized. An explosion under such circumstances, independent of any municipal regulations, would render the owner amenable for all damages arising therefrom. That the defendant's establishment was outside of the territorial limits of a city does not relieve the owner from responsibility or alter the case, if the dangerous erection was in close contiguity with dwelling-houses or buildings which might be injured or destroyed in case of an explosion. The fact that the magazine was liable to such a contingency, which could not be guarded against or averted by the greatest degree of care and

[Rudder v. Koopman & Gerdes.]

vigilance, evinces its dangerous character, and might in some localities render it a private nuisance. In such a case the rule which exonerates a party engaged in a lawful business, when free from negligence, has no application. The keeping or manufacturing of gunpowder or of fireworks does not necessarily constitute a nuisance *per se.* That depends upon the locality, the quantity, and the surrounding circumstances, and not entirely upon the degree of care used. In the case at bar it should have been left for the jury to determine whether from the dangerous character of the defendant's business, the proximity to other buildings, and all the facts proved upon the trial, the defendant was chargeable with maintaining a private nuisance and answerable for the damages arising from the explosion.

"A private nuisance is defined to be any thing done to the hurt or annoyance of the lands, tenements or hereditament of another.—3 Bl. Com. 216. Any unwarrantable, unreasonable or unlawful use by a person of his own property, real or personal, to the injury of another, comes within the definition stated, and renders the owner or possessor liable for all damages arising from such a use.—Wood's Law of Nuis., § 1, and authorities cited. The cases which are regarded as private nuisances are numerous, and the books are full of decisions holding the parties answerable for the injuries which result from their being maintained. The rule is of universal application that while a man may prosecute such business as he chooses on his own premises, he has no right to erect and maintain a nuisance to the injury of an adjoining proprietor or of his neighbors, even in the pursuit of a lawful trade.—*Aldred's Case,* 9 Coke 58; *Brady v. Weeks,* 3 Barb. 159; *Dubois v. Budlong,* 15 Abb. 445; *Wier's Appeal,* 74 Penn. St. 230.

"While a class of the reported cases relates to the prosecution of a legitimate business, which of itself produces inconvenience and injury to others, another class refers to acts done on the premises of the owner which are of themselves dangerous to the property and the persons of others who may reside in the vicinity, or who may by chance be passing along or in the neighborhood of the same. Of the former class are cases of slaughter houses, fat and offal boiling establishments, hog-styes or tallow manufactories, in or near a city, which are offen-

sive to the senses and render the enjoyment of life and property uncomfortable.—*Catlin v. Valentine*, 9 Pai. 575; *Brady v. Weeks*, 3 Barb. 157; *Dubois v. Budlong*, 15 Abb. 445; *Rex v. White*, 1 Burr. 337; 2 Bl. Com. 215; *Ferrand v. Marshall*, 21 Barb. 421. It is not necessary in these cases that the noxious trade or business should endanger the health of the neighborhood. So also the use of premises in a manner which causes a noise so continuous and excessive as to produce serious annoyance, or vapors or noxious smells, (*Tipping v. St. Helen's Smelting Co.*, 4 B. & S. (Q. B.) 608; *Brill v. Flagler*, 23 Wend. 354; *Pickard v. Collins*, 23 Barb. 444; Wood's Law of Nuis., § 5); or the burning of a brick kiln, from which gases escape which injure the trees in a person's neighborhood.—*Campbell v. Seaman*, 63 N. Y. 568; s. c., 20 Am. Rep. 567. Of the latter class also or those where the owner blasts rocks with gunpowder, and the fragments are liable to be thrown on the premises and injure the adjoining dwelling houses, or the owner or persons there being, or where persons travelling may be injured by such use.—*Hay v. Cohoes Co.*, 3 Barb. 42; s. c., 2 N. Y. 159; *Tremain v. Cohoes Co.*, 2 N. Y. 163: *Pixley v. Clark*, 35 Id. 523.

''Most of the cases cited rest upon the maxim '*sic utere tuo*,' etc., and where the right of undisturbed possession and enjoyment of property comes in conflict with rights of others, that it is better, as a matter of public policy, that a single individual should surrender the use of his land for especial purposes injurious to his neighbor or to others, than that the latter should be deprived of the use of their property altogether, or be subjected to great danger, loss and injury, which might result if the rights of the former were without any restriction or restraint.

''The keeping of gunpowder or other materials in a place, or under circumstances, where it would be liable, in case of explosion, to injure the dwelling houses or the persons of those residing in close proximity, we think, rests upon the same principle, and is governed by the same general rules. An individual has no more right to keep a magazine of powder upon his premises, which is dangerous, to the detriment of his neighbor, than he is authorized to engage in any other business which may occasion serious consequences.'' The opinion then goes

[Rudder v. Koopman & Gerdes.]

on to point out that the case of *People v. Sands, supra*, was not to the contrary of the views expressed.

In *Cheatham v. Shearon*, 1 Swan. 213 (55 Am. Dec. 734), decided by the Supreme Court of Tennessee in 1851, the allegations were that the plaintiff was owner of five dwelling houses and outhouses in the town of Nashville and in a thickly settled and populous neighborhood in said town, and the defendants wrongfully and injuriously erected a powder-house within one hundred and fifty yards of plaintiff's houses and within sixty feet of the line of the corporation of Nashville, situated in the populous and thickly settled neighborhood, in which, within a circuit of five hundred yards around said powder-house, included five or six hundred persons there dwelling and remaining; and the defendants wrongfully and injuriously caused to be stored and kept large quantities of gunpowder, and whilst so kept therein, the powder-house was stricken by lightning, igniting and exploding the powder and doing injury, by reason of the explosion, to plaintiff's houses. The court said: ''The only question in this case is whether the erection of a powder magazine in a populous part of the city and keeping stored therein large quantities of gunpowder, is *per se* a nuisance. And without doubt we think it is. The elementary treatises on criminal law hold that it is a nuisance, and Lord HOLT so held in an anonymous case reported in Holt 499.'' This English case, as it was reported in 12 Mod. 342, was referred to by KENT, C. J., in *People v. Sands, supra*, as being so meagrely reported as to be of little or no value; but in the Tennessee case just referred to, Lord HOLT's own report of the case is given, as follows : ''One was indicted for a nuisance for keeping several barrels of gunpowder in a house in Brentford Town, sometimes two days, sometimes a week, till he could conveniently send them to London.'' ''To support this indictment there must be apparent danger, or mischief already done. 2. Though the defendant had done this fifty or sixty years, yet if it be a nuisance, time will not make it lawful. 3. If at the time of setting up this house, in which the gunpowder is kept, there had been no houses near enough to be prejudiced by it, but some were built since, it would be at the peril of the builder. 4. Though gunpowder be a necessary thing, and for defense of the

kingdom, yet if it be kept in a place dangerous to the inhabitants or passengers it will be a nuisance.'' The Tennessee case is an emphatic enunciation of defendant's liability, upon the facts stated ; the learned judge closing his opinion with the inquiry, ''Can it be possible that the law shall protect us from the annoyance of a pig-sty, or a slaughter-house, and yet that it affords no protection from a danger that might be a constant annoyance, and which may, and sometimes does, result in a great destruction of life and property? Surely, we think not.'' The recovery against the defendant was sustained.

The case of *Dumesnil v. Dupont*, 18 B. Monroe, 800 (68 Am. Dec. 750), decided in 1858, was a bill for the abatement, as a nuisance, of a powder-house situated on the Oakland plank road within half a mile of the limits of the city of Louisville, within about three hundred yards of the complainant's residence, and but a short distance from his neighbors' houses. The bill averred that large quantities of powder were kept constantly in the house ; that no person was kept in charge of it, and it was liable to be fired or destroyed in various ways ; that should an explosion occur, the family of appellant and those of his neighbors, would be greatly injured, if not killed, and their property destroyed ; that they were greatly disturbed about the proximity of the powder-house, and were seriously apprehensive of danger and injury. The defendants set up, in answer, that they were merchants of Louisville, and furnished all the powder sold in that market, and kept in store only so much as would supply the demand of the public ; that such supply was a matter of great convenience to the public, and of advantage to the commerce of the city ; that their magazine was well constructed, and protected against accidents by secure fencing, lightning rods, and by the constant presence of a trusty man, whose sole business it was to attend to it, and who alone was permitted to enter it ; that it stands in a sparsely settled neighborhood and should an explosion occur, the danger of which was very remote and improbable, it would not seriously injure either the property or family of the appellant or his neighbors. The court found that the proof sustained, substantially, the allegations of the answer, except as to the probable effects of an explosion, in regard to which the witnesses differed. It was proved

[Rudder v. Koopman & Gerdes.]

that complainant's house stood about 330 yards from the magazine; another residence 500 yards distant, another 300 yards, and a tavern house about 260 yards. No effort was made to prove any defect in the arrangement or construction of the building, or any impropriety in conducting the business. So the court said, the only question arising upon the record was, whether the magazine was a nuisance, the abatement of which was within the jurisdiction of the chancellor. After discussing general principles governing that jurisdiction, the court held that the case proven did not entitle complainant to relief. The opinion shows that very strict technical rules governing injunction of nuisances were observed (we do not say improperly) by the court. Thus, the language of Lord Brougham, in a case cited was quoted as follows: "If the thing sought to be prohibited is in itself a nuisance, the court will interfere to stay irreparable mischief without waiting for the result of a trial. But where the thing sought to be restrained is not unavoidably and in itself noxious, but only something which may according to circumstances prove so, then the court will refuse to interfere. The distinction between the two kinds of erection or operation is obvious, and the soundness of that discretion seems undeniable which would be very slow to interfere where the thing to be stopped, while it is highly beneficial to one party may very possibly be prejudicial to none. The great fitness of pausing much before we interrupt men in those modes of enjoying or improving their property which are *prima facie* harmless, or even praiseworthy, is equally manifest. And it is always to be borne in mind that the jurisdiction of this court over nuisances by injunction, at all, is of recent growth, has not till very lately been much exercised, and has at various times, found great reluctance on the part of the learned judges to use it even in cases where the thing or act complained of was admitted to be directly and immediately hurtful to the complainant. It is also very material to observe that no instance can be produced of the interposition by injunction in the case of what we have been regarding as an eventual or contingent nuisance."

In *McAndrews v. Collerd*, 15 Vroom 189, (36 Am. Rep. 508), McAndrews was the contractor to construct a railroad tunnel through rock. The work occupied several

years. He constructed near one end of the tunnel, and within the limits of Jersey City, a magazine for the explosive materials which he used in blasting the rock. While the magazine was being thus maintained, the materials exploded doing great damage to property in the vicinity, even at a distance of about 1,200 feet. Among the property injured were some houses belonging to plaintiff, who sued McAndrews for damages therefor. The court used the following language: "The proposition presented by the plaintiff in error, and on which he rests his right to a reversal of the judgment against him, is that inasmuch as the explosive materials were necessary to the work and the work was done pursuant to legislative authority, the collection of the explosives in magazine, in such quantity as the convenient prosecution of the work reasonably required, although highly dangerous, was not a nuisance—that is to say, that in the legislative authority to do the work was included the authority to store, with impunity, in a convenient place, so much explosive material as might be necessary for the convenient prosecution of the work, notwithstanding the danger or positive damage to others, or their property, arising from such collection of dangerous materials. Or to state it otherwise, that the legislative authority secures, in the absence of negligence, immunity from liability for injury from the use of any means which may be necessary for the convenient prosecution of the work. The court charged the jury that nothing but the most imperious and absolute necessity would justify such a conclusion ; that the legislature could not be charged with an intention to authorize a nuisance dangerous to life and property in a community, if there was any other way in which the work could be done ; and that it was incumbent on the defendant in the action to satisfy the jury that it was absolutely necessary to have the magazine there, with stores of explosives, as maintained by him. The plaintiff in error has no reason to complain of this charge. It was quite as favorable to him, to say the least of it, as it ought to have been. His proposition that the legislative authority to a private corporation, or an individual, to do a work for its or his own profit, includes authority to use, at whatever hazard to the persons or property of others, dangerous materials, provided they be necessary to the

convenient prosecution of the work, cannot be sustained.
This question was considered in *Hay v. Cohoes Co.*, 2 N.
Y. 159, and in *Tremain v. Cohoes Co.*, *Ib.* 163, where a
land-owner sought damages for injuries to his property
by the blasting of rocks by the defendants, in construct-
ing a canal under legislative authority. The defendants
insisted, in the former case, that unless they were guilty
of negligence, unskillfulness, wantonness, or delay, they
were not liable ; and in the other, that they should be
permitted to show, in exhonoration from liability for
damages, that they executed the work in a most careful
manner.

"It was held that they were liable for the injury, al-
though no negligence or want of skill in executing the
work was proved, and that they were liable for actual
damages, even though they showed that they had done
the work in the most careful manner. There is an
obvious distinction between the liability of a private
corporation to public prosecution for a legalized nuisance,
and its liability to a private action for damages arising
from such nuisance. In the one case, the legislative
authority is a protection, and in the other it is not.
Wood on Nuis., § 750. Said the court in *Tinsman v. B.
D. R. R. Co.*, 2 Dutch. 148 : 'The position that a corpo-
ration authorized to construct public highways, or other
works of public improvement, is vested with the im-
munities that pertain to the sovereign, and is exempt
from liability to damages for injuries done to individ-
uals in the exercise of that power, cannot be sustained
upon grounds of reason and justice. That the individ-
ual is entitled, in justice and equity, to remuneration
has never been denied. It is a principle of natural, as well
as constitutional law, that private property can be taken
for public use by virtue of the eminent domain, only
upon just compensation. And in regard to that class of
injuries not falling within the pale of the constitutional
provision, at least where the injury is direct, it is ad-
mitted that the party injured, upon principles of natural
justice, is entitled to reparation.' The distinction is
drawn, in that case, between the non-liability of public
agents, in the construction, within their limitations, of
public works, and the liability of private corporations
authorized by the legislature to construct and operate

works for their own emolument, though for public advantage.

"The keeping of gun powder, nitro-glycerine, or other explosive substances, in large quantities, in the vicinity of a dwelling-house or place of business, is a nuisance *per se*, and may be abated as such by action at law or injunction in equity ; and if actual injury results therefrom, the person keeping them is liable therefor, even though the act occasioning the explosion is due to other persons, and is not chargeable to his personal negligence.—Wood on Nuis., § 142 ; *Cuff v. N. & N. Y. R. R. Co.*, 6 Vroom, 17 ; s. c., 10 Am. Rep. 215."

In *Laflin & Rand Powder Co. v. Tearney*, 131 Ill. 322, (19 Am. St. Rep. 34), the subject was fully considered. Correct syllabi of the opinion are as follows : "Gunpowder magazine situated so near to the dwelling-house of another as to be liable to inflict serious injury to his person or property in case of explosion is a private nuisance, making the owner liable whether the powder was carefully kept or not." "As a general rule the question of care or want of care is not involved in an action for injuries resulting from a nuisance ; consequently, if actual injury results from the keeping of gunpowder, the person keeping it will be liable, even though the explosion is not chargeable to his personal negligence. Hence, it is not necessary to charge him with negligence."

The South Carolina and Texas courts hold to like effect.—*Emory v. Hazard Powder Co.*, 24 S. C. 476 ; *Comminge v. Stephenson*, Tex. 642.

In *Weir's Appeal,* 74 Pa. St. 230, a distinction is forcibly drawn between the keeping of highly explosive and other objectionable erections as follows : After holding that the storing of gunpowder in large quantities in thickly settled places is a nuisance, the court said : "But it is not confined to cities and boroughs. This court has acknowledged and declared it as a case clearly within the general rule of equity upon this subject, in the opinion of the majority, as pronounced by Mr. Chief Justice Thompson, in *Rhodes v. Dunbar*, 7 P. F. Smith, 274. After remarking upon the particular character and danger of the establishment, the subject matter of the complaint in that case, which was a steam planing mill, which had long been established in the neighborhood, had been burned down, and the injunction asked for was

[Rudder v. Koopman & Gerdes.]

against its erection, and which the majority of the court thought was not within the rule, he proceeds: 'These observations give no just grounds to draw the inference that a powder-magazine, or depot of nitro-glycerine, or other like explosive materials, might not possibly be enjoined even if not prohibited, as they usually are, by ordinance or law. It is not on the ground alone of their liability to fire, primarily or even secondarily, that they may possibly be dealt with as nuisances, but on account of their liability to explosion by contact with the smallest spark of fire, and the utter impossibility to guard against the consequences, or set bounds to the injury, which, being instantaneous, extends alike to property and persons within its reach. The destructiveness of these agents results from the irrepressible gases once set in motion, infinitely more than from fires which might ensue as a consequence. Persons and property in the neighborhood of a burning building, let it burn ever so fiercely, in most cases have a chance of escaping injury. Not so, when explosive forces instantly prostrate everything near them, as in the instances of powder, nitroglycerine and other chemicals of an explosive or instantly inflammable nature.' This reason is so cogent that nothing could be added which would increase its force."

In *Cook v. Anderson*, 85 Ala. 99, the facts were that the party sought to be charged occupied a store adjoining the one injured, in the city of Montgomery, as a builders' material supply store, having in stock in the basement of the store, paints, oils, varnishes, lime and some cotton. There were no such explosives as gunpowder or dynamite. Without any fault or agency of the owner, fire originated in the basement, and was communicated to the adjoining building of the party claiming damages for the injury. This court, by Justice CLOPTON, said: "The contention of defendants [who were pleading recoupment] can be founded only on the ground, that keeping inflammable materials for the purpose of trade and traffic, in the basement of a store in a city is a private nuisance *per se*, which makes the plaintiff liable for actual injury resulting therefrom, without regard to negligence on his part. Keeping explosive substances in large quantities, in the vicinity of dwelling houses or places of business, is ordinarily regarded a nuisance, whether so or not being dependent upon the

[Rudder v. Koopman & Gerdes.]

locality, the quantity, and the surrounding circumstances. But negligence, or want of ordinary care, in the manner of keeping, or in keeping large quantities, is requisite to impose a liability to answer in damages occasioned by an accidental explosion or fire, which it is incumbent on the party affirming to prove.—Wood's Law Nuis., § 140. The admitted facts do not tend to show anything in the manner of keeping the materials mentioned, or in the way they were stored, or in their use, or in the conduct of the plaintiff concerning them, from which negligence can be inferred; and the mere fact of keeping such materials in store for trade is not sufficient negligence. The rule governs which exonerates a party from liability when engaged in a lawful business, and free from negligence."

The principle here declared is, that it is not wrong to keep in store in a city inflammable materials such as paints, oils, varnishes, lime, cotton and articles of that character, for the purpose of business or use, and the mere fact of so keeping them does not give rise to an action for a nuisance, though in case of fire, they are ignited and burned, and their burning contributed to the destruction of the adjacent property of another. In order to hold the keeper liable, in such a case, it must be alleged and shown that he was guilty of some negligence or wrong in the manner of keeping the materials; that is to say, in the way that he stored, kept or handled them. This is, we think, undoubtedly, a correct principle, in reference to keeping materials of that character. Otherwise, every paint or drug store in a town or city would be a nuisance. But the court, in that case, never intended to declare that the keeping of large quantities of explosive substances, such as gunpowder, dynamite, nitro-glycerine and the like—substances which upon the application of the smallest spark, or a slight concussion, will explode with a force beyond any human agency to control, or power to resist—in a house or place, in a thickly settled portion of a town or city, where there were, in proximity, many buildings and persons, and where the substances were liable to explode and do injury to such persons or property, is not of itself a wrong, giving rise to an action in favor of one injured in his person or property by reason of an explosion of the substances, whether there was any special negligence

in the particular manner of keeping, protecting or handling the explosives or not. Indeed, the language of Judge CLOPTON, in his references to explosives of this kind, clearly implies that the keeping of them, in large quantities, at such a place, and under such circumstances, as above stated, with resultant injury to another from their explosion, is of itself actionable without regard to any other special negligence on the part of the keeper. His language is plain. He says that whether or not the keeping of such explosives in the vicinity of dwelling houses or places of business is a nuisance, depends upon the locality, the quantity and the surrounding circumstances. "But," he says, "the negligence, or want of ordinary care, in the manner of keeping, or in keeping large quantities, is requisite to impose a liability," etc. From this two rules are deducible : one is, that if large quantities are kept at such a place, and under such surrounding circumstances as to render it dangerous to the people or property in the neighborhood by reason of its liability to explode and do injury ; in other words, to create a nuisance, then there was wrong, or negligence (if we may call it negligence) which gives a right of action to one injured. The other is, that if the explosives were not kept in such quantities, and at such a place and under such surrounding circumstances, as to bring the case within that rule, then there must be shown some special negligence in the manner of keeping them.

The subsequent case of *Collins v. A. G. S. R. R. Co.*, 104 Ala. 390, drew its principles from *Cook v. Anderson*, *supra*, and upon the facts of the case, rightly resolved that the powder was not kept at such a place and under such surrounding circumstances as constituted the mere keeping of it wrong and actionable as a nuisance ; and there being no special negligence in the manner of keeping it, the case was not within either of the rules to which we have adverted. In that case, the defendant as a common carrier, had stored in its general freight warehouse, in Birmingham, a large quantity of gunpowder, awaiting delivery to consignee. The powder, transported by defendant, reached Birmingham, and was stored in the warehouse on July 29th, and on the night of the 30th was exploded by some unknown means, destroying freight consigned to the plaintiff and

stored in the same warehouse. Notice of the arrival of the powder was given the consignee on the morning of the day of the explosion. The building was constructed of corrugated iron and covered with tin, and the company kept a competent watchman there at night for the purpose of guarding the depot. There was no evidence of negligence on the part of defendant. In disposing of the question of defendant's liability for keeping the powder the court, by Justice HARALSON, said: "The fact that the defendant had in its warehouse, at the time, 1,200 lbs. of powder, is not, of itself, such evidence of negligence as entitles the plaintiff to recover. While it may be said that the keeping of large quantities of explosive material in a building in a populous town or city may be a nuisance, yet, the fact whether it is such or not, must depend on the locality, quantity of the material stored and the circumstances. *Negligence in keeping it*, [emphasis ours], or in the manner of its keeping, is requisite to impose a liability to answer in damages for injuries caused by an accidental explosion or fire, which it is incumbent on the party affirming to prove." Citing *Cook v. Anderson, supra.* The opinion then proceeds: "The defendant was a common carrier of such and all other commercial materials. It is not shown that there was any city ordinance against storing the powder in its depot for the purpose of delivering it to its consignee. It arrived on the 29th, the day before the explosion, and the consignee was duly notified, on the morning of the 30th of July, the day of the explosion, of its arrival; and instead of being negligent, the evidence shows the defendant was very careful to preserve it against accident in a house built of iron and covered with tin and carefully guarded." And it was held that defendant was not liable. It is plain the court, in delivering this opinion, intended to be guided by the principles expressed in *Cook v. Anderson, supra*, from which its language is, in part, substantially, copied. The same distinction in the matter of negligence in the *fact* of keeping, and in the *manner* of keeping powder, was preserved. This is rendered more apparent by the pertinent argument following, going to show absence of wrong in the fact of keeping, by reason of the circumstance that the powder was really, in transit to the consignee, in the possession of the defendant, as a common

carrier, who, at the time of the accident, was guilty of no dereliction in its transportation, or the manner thereof, and its delivery to the consignee. That argument would have been impertinent, if, as a general principle of law, the defendant was authorized to keep in store, indefinitely, in a populous city, liable, in case of explosion, to do serious injury to others, a large quantity of gunpowder, provided the manner of such keeping was characterized by no special negligence. We think there is sound reason for holding the defendant not liable in that case. The powder was not stored for indefinite keeping, nor for sale or use. It was, in fact, in transit.. Its storage in the warehouse was necessarily of very short duration, and was absolutely essential to its delivery to the consignee. The case would have been the same, had it been in the car, just arrived in the depot, at the time of the explosion. This transit was characterized by due care on the part of the defendant. To hold a carrier liable, under such circumstances, would stop the transportation of these useful explosives, and take a step further than any adjudged case has yet gone.

We re-state the case made by the complaint in the present cause. The defendants kept, in a wooden store, in a thickly settled portion of the incorporated town of Cullman, where there were, in proximity, many buildings and persons, large quantities of dynamite and gunpowder, liable to explode and do serious injury to such persons or property. It did explode, by the burning of the house in which it was kept, with such force and violence as to cast fire brands several hundred feet, and destroy the property of the plaintiff. Upon proof of these facts, the defendants are responsible. Those counts of the complaint, which come up to the case above stated, whether those to which demurrers were sustained, or those which the court refused to permit the plaintiff to file, must be allowed.

Reversed and remanded.